**K&L Gates LLP**
10100 Santa Monica Boulevard
Eighth Floor
Los Angeles, California, 90067
Telephone: 310.552.5000
Facsimile: 310.552.5001

Christina N. Goodrich (SBN 261722)
christina.goodrich@klgates.com
Zachary T. Timm (SBN 316564)
zach.timm@klgates.com
Connor J. Meggs (336159)
connor.meggs@klgates.com
Lauren E. Elvick (SBN 348619)
lauren.elvick@klgates.com

Attorneys for Plaintiff
AXOS BANK

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# EASTERN DIVISION

| | |
|---|---|
| AXOS BANK, a federally chartered savings bank,<br><br>Plaintiff,<br><br>v.<br><br>NANO BANC, a California corporation; *et al.*,<br><br>Defendants. | Case No.: 5:19-cv-02092-JGB-SHKx<br><br>[Assigned to the Hon. Jesus G. Bernal]<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS, AND PREJUDGMENT/POSTJUDGMENT INTEREST PURSUANT TO RULE 54(d)**<br><br>Date:        October 6, 2025<br>Time:        9:00 a.m.<br>Courtroom:   1 |

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS PURSUANT TO RULE 54(d)**

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 6, 2025 at 9:00 a.m., or as soon thereafter as this matter may be heard, in Courtroom 1 of the United States District Court for the Central District of California, located at 3470 Twelfth Street, Riverside, California 92501, Plaintiff Axos Bank ("Axos" or "Plaintiff") will, and hereby does, move for attorneys' fees to be paid by Defendants pursuant to Defend Trade Secrets Act (DTSA) 18 U.S.C. §1836(b)(3)(D) and as a matter of contract in the sum of $3,628,542.28 ($3,557,660.78 for K&L fees plus $70,881.50 for Arbitration Counsel work)], as well as an additional sum of $170,439.41 for recoverable, but non-taxable costs, which were not included in Axos's previously filed Application to Tax Costs (DE359), and for prejudgment interest.[1]  Axos is furthermore entitled to prejudgment interest and post-judgment interest under applicable case law and statutes.

As set forth below, Axos seeks attorneys' fees and recoverable, but non-taxable costs (not included in its Application to Tax Costs) pursuant to the DTSA and the relevant contract.  Axos received a unanimous jury verdict in its favor on all claims tried to the jury and the jury concluded that Defendants engaged in willful and malicious conduct.  Thus, there is no doubt that Axos is the prevailing party and entitled to attorneys' fees and costs under the DTSA and contract.  It is similarly beyond dispute that Axos is entitled to pre- and post-judgment interest as the Court has already recognized as much in the Judgment.  Thus, all that is needed is to fix the amount of interest and the date on which it begins (as to pre-judgment interest).

This Motion is made pursuant to Federal Rules of Civil Procedure 54(d)(2), and other relevant authority as cited in the Memorandum of Points and Authorities.

---

[1] This Motion and accompanying Memorandum of Points and Authorities uses the following definitions: Defendant Nano Banc ("Nano"), Defendant Robert Hasler ("Hasler"), Defendant Mark Troncale ("Troncale"), and Defendant Shelby Martello ("Martello") (collectively, the "Defendants"); Plaintiff Axos Bank ("Axos" or "Plaintiff"); Axos's Motion for Attorneys' Fees and Costs (the "Motion"); the Defend Trade Secrets Act at 18 U.S.C. §1836, *et seq*. (the "DTSA").

2

This Motion is based upon this Notice of Motion and Motion, the below Memorandum of Points and Authorities, the supporting declarations, the complete Court files and records in this action, and all matters that may be properly considered by the Court at the hearing on this Motion.

DATED: August 25, 2025

**K&L GATES LLP**

By: */s/ Christina N. Goodrich*

Christina N. Goodrich
Zachary T. Timm
Connor J. Meggs
Lauren E. Elvick

*Attorneys for Plaintiff Axos Bank*

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS'
FEES AND COSTS PURSUANT TO RULE 54(d)**

# <u>TABLE OF CONTENTS</u>

I.    **INTRODUCTION** ........................................................................**10**

II.   **FACTUAL BACKGROUND** ........................................................**11**

III.  **JUDICIAL STANDARD** ..............................................................**11**

IV.  **ARGUMENT** ..................................................................................**11**

    A.    Axos is entitled to attorneys' fees under its DTSA claim.................... 11

    B.    Axos is entitled to attorneys' fees under its claim for breach of
        contract against Martello. ................................................................ 12

    C.    Plaintiffs' Fees Requested Fees Need Not Be Apportioned. ............... 13

        1.    The requested attorneys' fees should not be apportioned
            between claims. ................................................................... 13

        2.    The requested attorneys' fees should not be apportioned
            between Defendants. ........................................................... 16

    D.    The amount of fees requested is reasonable. ........................................ 18

        1.    Computation of attorneys' fees using the lodestar method. ......... 18

        2.    Axos's requested fees are reasonable. ........................................ 21

        3.    Axos is further entitled to fees incurred in a prior arbitration
            against Hasler. ................................................................... 25

    E.    Axos is entitled to its non-taxable costs under the DTSA. .................. 26

    F.    Axos is entitled to pre-and-post-judgment interest on its claims.......... 27

V.    **CONCLUSION** ...........................................................................**29**

**TABLES OF CONTENTS AND AUTHORITIES**

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*AgroFresh Inc. v. Essentiv LLC*,
   No. 16-662 (MN), 2020 U.S. Dist. LEXIS 222898 (D. Del. Nov. 30,
   2020) .................................................................................................... 28

*Billion Motors, Inc. v. 5 Star Auto Grp.*,
   No. 8:19-CV-00945-SVW, 2020 WL8373396 (C.D. Cal. Dec. 17,
   2020) ............................................................................................... 20, 23

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human
   Res.*,
   532 U.S. 598 (2001) ............................................................................ 12

*CH2O, Inc. v. Meras Eng'g, Inc.*,
   No. LACV1308418JAKGJSX, 2020 WL13388230 (C.D. Cal. Apr. 6,
   2020) .................................................................................................... 28

*Chaudhry v. City of Los Angeles*,
   751 F.3d 1096 (9th Cir. 2014) ............................................................ 11

*Compulife Software, Inc. v. Newman*,
   111 F.4th 1147 (11th Cir. 2024) ......................................................... 28

*Compulife Software, Inc. v. Rutstein*,
   No. 9:16-CV-80808-BER, 2021 WL5830554 (S.D. Fla. Oct. 20, 2021) .......... 28

*Corder v. Gates*,
   947 F.2d 374 (9th Cir.1991) ............................................................... 16

*DePuy Synthes Sales, Inc. v. Stryker Corp.*,
   No. EDCV181557FMOKKX, 2023WL6786772 (C.D. Cal. Aug. 17,
   2023) .................................................................................................... 13

*Dishman v. UNUM Life Ins. Co. of Am.*,
   269 F.3d 974 (9th Cir. 2001) .............................................................. 25

*El-Hakem v. BJY Inc.*,
   415 F.3d 1068 (9th Cir. 2005) ....................................................... 15, 16

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Elser v. I.A.M. Nat. Pension Fund,*
  579 F. Supp. 1375 (C.D. Cal. 1984) ................................................. 22

*Facet Techs., LLC v. LifeScan, Inc.,*
  No. 222CV1717MCSMAR, 2024 WL1699355 (C.D. Cal. Jan. 17,
  2024) ............................................................................................... 24

*Farmers Ins. Exchange v. Law Offices of Conrado Joe Sayas, Jr.,*
  250 F.3d 1234 (9th Cir. 2001) ........................................................ 12

*Fox v. Vice,*
  563 U.S. 826 (2011) ........................................................................ 19

*Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.,*
  886 F.2d 1545 (9th Cir. 1989) ........................................................ 27

*G.P.P., Inc. v. Guardian Prot. Prods., Inc.,*
  126 F.4th 1367 (9th Cir. 2025) ....................................................... 14

*Gates v. Deukmejian,*
  987 F.2d 1392 (9th Cir. 1992) ........................................................ 11

*Gracie v. Gracie,*
  217 F.3d 1060 (9th Cir. 2000) ........................................................ 16

*Grove v. Wells Fargo Fin. California, Inc.,*
  606 F.3d 577 (9th Cir. 2010) .......................................................... 26

*Harbor Compliance Corp. v. Firstbase.IO, Inc.,*
  No. 5:23-CV-0802, 2025 WL383804 (E.D. Pa. Feb. 4, 2025) ......... 27

*Hensley v. Eckerhart,*
  461 U.S. 424 (1983) ................................................................. 12, 18

*Hsu v. Abbara,*
  9 Cal. 4th 863 (1995) (plaintiff who obtained requested relief is "the
  party prevailing on the contract for purposes of attorney fees under
  section 1717.") ................................................................................ 13

*Hung Nguyen v. Regents of Univ. of California,*
  No. 8:17-CV-00423-JVS-KESX, 2018 WL6112616 (C.D. Cal. May
  18, 2018) ......................................................................................... 21

*Intel Corp. v. Terabyte Int'l., Inc.,*
  6 F.3d 614 (9th Cir. 1993) .............................................................. 18

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS'
FEES AND COSTS PURSUANT TO RULE 54(d)**

*Kolay Flooring Int'l, LLC v. Milliken & Co.*,
    No. 2:18-CV-00640-SVW-KS, 2019 WL3059276 (C.D. Cal. Mar. 6,
    2019) ................................................................................24

*Kong v. Margaret M. Harris Corp.*,
    No. CV182112MWFFFMX, 2020 WL4018294 (C.D. Cal. Mar. 5,
    2020) ................................................................................21

*Lateral Link Grp., LLC v. Springut*,
    No. LACV1405695JAKJEMX, 2017 WL11634389 (C.D. Cal. Feb.
    14, 2017) ..........................................................................21

*Logtale, Ltd. v. IKOR, Inc.*,
    2016 WL7743405 (N.D. Cal. Oct. 14, 2016) ........................24

*Metavante Corp. v. Emigrant Sav. Bank*,
    619 F.3d 748 (7th Cir. 2010) .............................................23

*Monster Energy Co. v. Vital Pharms., Inc.*,
    No. EDCV181882JGBSHKX, 2023 WL8168854 (C.D. Cal. Oct. 6,
    2023), *aff'd*, No. 23-55451, 2025 WL1111495 (9th Cir. Apr. 15, 2025)....*passim*

*Moore v. James H. Matthews & Co.*,
    682 F.2d 830 (9th Cir. 1982) .............................................22

*Moran v. ESOP Comm. of Aluminum Precision Prods., Inc. Emp. Stock*
    *Ownership Plan*,
    No. 8:24-CV-00642 MWF, 2025 WL1712397 (C.D. Cal. June 2, 2025)..........20

*Moreno v. City of Sacramento*,
    534 F.3d 1106 (9th Cir. 2008) ......................................19, 20

*N. L. by Lemos v. Credit One Bank, N.A.*,
    807 F. App'x 698 (9th Cir. 2020) .......................................14

*Nisbet v. Am. Nat'l Red Cross*,
    No. CV 16-7342-GW (ASX), 2018 WL11462272 (C.D. Cal. July 18,
    2018), *aff'd*, 795 F. App'x 505 (9th Cir. 2019) ...................14

*Overrated Prods., Inc. v. Universal Music Grp. Recordings, Inc.*,
    No. CV 19-2899-RSWL-RAOX, 2020 WL10052853 (C.D. Cal. Mar.
    24, 2020) ..........................................................................15

7

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS'
FEES AND COSTS PURSUANT TO RULE 54(d)**

*Perfect 10, Inc. v. Giganews, Inc.*,
 CV 11- 07098-AB (SHX), 2015 U.S. Dist. LEXIS 53681 (C.D. Cal.
 Mar. 24, 2015) ...........................................................................................24

*Picture Shop, LLC v. Saw Inc.*,
 No. 2:23-CV-03075-KK (MAR), 2024 WL2106747 (C.D. Cal. Apr. 5,
 2024) ..........................................................................................................19

*SAS v. Sawabeh Info. Servs. Co.*,
 No. CV 11-4147 MMM ...............................................................................23

*Sec. & Exch. Comm'n v. Hurd*,
 No. CV1304464RGKJCGX, 2014 WL12561073 (C.D. Cal. Feb. 21,
 2014) ..........................................................................................................28

*Matter of Sparkman*,
 703 F.2d 1097 (9th Cir. 1983) ....................................................................13

*Stonebrae, L.P. v. Toll Bros., Inc.*,
 2011 WL1334444 (N.D. Cal. Apr. 7, 2011)................................................23

*Thorne v. City of El Segundo*,
 802 F.2d 1131 (9th Cir. 1986) ....................................................................14

*In re Toys R Us-Delaware, Inc. Fair & Accurate Credit Transactions Act
 (FACTA) Litig.*,
 295 F.R.D. 438 (C.D. Cal. 2014)..................................................................24

*United States v. $12,248 U.S. Currency*,
 957 F.2d 1513 (9th Cir. 1991) ....................................................................20

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
 896 F.2d 403 (9th Cir. 1990) ......................................................................24

*United Steelworkers of Am. v. Ret. Income Plan For Hourly-Rated Emps.
 of ASARCO, Inc.*,
 512 F.3d 555 (9th Cir. 2008) ......................................................................19

*Vargas v. Howell*,
 949 F.3d 1188 (9th Cir. 2020) ..............................................................11, 19

*Welch v. Metro. Life Ins. Co.*,
 480 F.3d 942 (9th Cir. 2007) ......................................................................23

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS'
FEES AND COSTS PURSUANT TO RULE 54(d)**

*Wyatt Tech. Corp. v. Malvern Instruments, Inc.*,
    No. CV 07-8298 ABC (RZX), 2010 WL11404472 (C.D. Cal. June 17,
    2010), aff'd, 526 F. App'x 761 (9th Cir. 2013) ...................................................27

**Statutes**

18 U.S.C. §1836(b)(3)(D) ..........................................................................11, 12, 26

18 U.S.C. §1920 ...............................................................................................26

28 U.S.C. 1961 .................................................................................................29

Cal. Code Civ. Proc. §1021 ..............................................................................13

CCP §1717 ........................................................................................................13

CCP §1717(a) ...................................................................................................13

CCP §3287(a) ...................................................................................................27

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS'
FEES AND COSTS PURSUANT TO RULE 54(d)**

1

## I. **INTRODUCTION**

2

This Motion follows ***six years*** of litigation, multiple failed defense-side
3
dispositive motions, a unanimous jury verdict on all claims, and entry of judgment for
4
Axos totaling $40 million. All along, Defendants' litigation conduct was seemingly
5
designed to drive up Plaintiff's attorneys' fees to dissuade Plaintiff from going to trial.
6
This included delaying responding to discovery and producing documents—only
7
making substantial productions following Axos's service of *dozens* of third-party
8
subpoenas, as well as numerous IDCs before the Magistrate.    After successfully
9
thwarting Defendants' obstreperous tactics for ***years*** and obtaining a jury verdict, Axos
10
seeks its reasonable attorneys' fees, costs, and pre-and-post-judgment interest as
11
authorized by statute, contract, and caselaw.

12

Axos is entitled to its reasonable attorneys' fees in two ways: (1) under the Defend
13
Trade Secrets Act (DTSA) against ***all*** Defendants, considering the jury's unanimous
14
finding that ***each*** Defendant willfully and maliciously misappropriated Axos's trade
15
secrets; and (2) under the contract with Martello. Given the jury's express factual
16
findings, neither ground for attorneys' fees requires any further substantive
17
determination by this Court. Similarly, because of the way in which both Defendants'
18
and Axos litigated this case, there is no need for the Court to apportion fees between the
19
claims or Defendants. Defendants acted in concert as one in their scheme to
20
misappropriate Axos's trade secrets, and it is this scheme that formed the core of Axos's
21
Complaint and presentation at trial. Further, Defendants' joint defense means that each
22
of the hours spent by Axos's counsel relating to this case related to all of the Defendants.

23

Thus, the Court need only decide whether Axos's fees are reasonable. And as
24
shown below, Axos's requested fees are more than reasonable because they reflect rates
25
significantly lower than those customarily charged in this district and reflect a reasonable
26
amount of hours expended given the complexity of this case, breadth of issues and
27
discovery, and the ***six years*** of litigation it took to achieve a favorable jury verdict.

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

Further, Axos is also entitled to its nontaxable costs under the DTSA and pre-and-post-judgment interest on all claims.

## II.   FACTUAL BACKGROUND

The jury returned a unanimous verdict in Plaintiff's favor on all claims on May, 7, 2025 following a jury trial beginning on April 22, 2025. As is relevant here, the Jury found Defendants willfully and maliciously committed trade secret misappropriation in violation of the DTSA and Martello breached as contract with an attorneys' fees provision==her March 15, 2018 Pay Plan (*See* DE305 at 22-25) which provides: "Employee agrees to pay the reasonable costs and attorney fees incurred by the Company resulting from the Company's successful enforcement of the terms and provisions of this Agreement." (Timm Decl., Ex. 4 at §VI.I.) On July 31, 2025, this Court entered a partial final judgment against Defendants in the total amount of $40 Million.(DE355.)

## III.   JUDICIAL STANDARD

Rule 54(d) provides a party can move for attorneys' fees and such motion must "specify the judgment and the statute, rule, or other grounds entitling the movant to the award." *See* Fed. R. Civ. P. 54(d)(2)(B).  A district court must give some "'concise but *clear*'" explanation of "how it came up with the amount." *Vargas v. Howell*, 949 F.3d 1188, 1195 (9th Cir. 2020) (quoting *Hensley*, 461 U.S. at 437). And the larger the difference between the fee requested and the fee awarded, the "more specific articulation of the court's reasoning is expected." *Id.*; *see also Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1112 (9th Cir. 2014) ("[A] reduction of 88 percent requires a more specific explanation."); *Gates v. Deukmejian*, 987 F.2d 1392, 1399–1400 (9th Cir. 1992) (same).

## IV.   ARGUMENT

### A.   Axos is entitled to attorneys' fees under its DTSA claim.

The DTSA authorizes an award of reasonable attorneys' fees to the prevailing party if the trade secret was willfully and maliciously appropriated. *See* 18 U.S.C. §1836(b)(3)(D);   *Monster   Energy   Co.   v.   Vital   Pharms.,   Inc.,*   No.

**MEMORANDUM OF POINTS AND AUTHORITIES**

EDCV181882JGBSHKX, 2023 WL8168854, *4 (C.D. Cal. Oct. 6, 2023), *aff'd*, No. 23-55451, 2025 WL1111495 (9th Cir. Apr. 15, 2025). A "prevailing party" is one that receives a judgment in its favor on the merits. *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.,* 532 U.S. 598, 605 (2001); *see also Hensley*, 461 U.S. at 433 n.7 (confirming standard is "applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'"). To recover its attorneys' fees, therefore: (1) Axos must be the prevailing party; and (2) Defendants' misappropriation must have been willful and malicious.  Here, the jury has already decided both issues in the affirmative, authorizing this Court to award fees and requiring the Court to only determine the amount is appropriate. (DE305.)

The jury's verdict confirms Axos is indisputably the prevailing party on its DTSA claim.  (DE305 at §I.) This Court thereafter entered judgment against the Defendants consistent with that verdict.  (DE355.) This Court denied Defendants' motion for judgment as a matter of law twice, confirming that the jury's findings of fact and verdict stand. (DE286, 327, & 357.) Thus, Plaintiff succeeded on "any significant issue in litigation" and achieved "some of the benefit" sought in bringing suit, and is the prevailing party. *Hensley*, 461 U.S. at 433.

Additionally, the jury found that ***all*** Defendant willfully and maliciously misappropriated Axos's trade secrets. (DE305 at §I.8.) This Court has also now entered judgment confirming such willful and malicious misappropriation.  (DE355.) Thus, Axos is entitled to recover its reasonable attorneys' fees under the DTSA. 18 U.S.C. §1836(b)(3)(D); *Monster Energy Co. v. Vital Pharms., Inc.,* 2023 WL8168854, *4 (awarding approximately $21 million in attorneys fees for willful and malicious misappropriation under the DTSA).

## B. <u>Axos is entitled to attorneys' fees under its claim for breach of contract against Martello.</u>

A party may recover fees where the parties to the contract "contractually obligate themselves to pay attorneys' fees. *Farmers Ins. Exchange v. Law Offices of Conrado*

12

*Joe Sayas, Jr.*, 250 F.3d 1234, 1237 (9th Cir. 2001); Cal. Code Civ. Proc. ("CCP") §1021. CCP §1717 provides: "[i]n any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded" to the prevailing party, then such a provision is enforceable. CCP §1717(a). The prevailing party is defined as "the party who recovered a greater relief in the action on the contract." CCP§1717(b)(1).

Here, Axos is indisputably the prevailing party on both of its contract claims. Specifically, the jury found both Hasler and Martello had each breached their contracts (DE305 at §§V & VII) (reflected in the judgment (DE355)). *See Hsu v. Abbara*, 9 Cal. 4th 863, 876, 891 (1995) (plaintiff who obtained requested relief is "the party prevailing on the contract for purposes of attorney fees under section 1717.")

The Pay Plan provides: "Employee [Martello] agrees to pay the reasonable costs and attorney fees incurred by the Company resulting from the Company's successful enforcement of the terms and provisions of this Agreement." (*See* Timm Decl., Ex. 4 at §VI.I.)  The jury found that Martello failed to do something the Pay Plan required her to do (DE305 at §VI.6) and that she did something the Pay Plan prohibited her from doing (*Id*., at §VI.7).  Martello, therefore, breached the Pay Plan, which the jury further found damaged Axos.  (*Id*., at §VI.8.)  Thus, Axos is entitled to fees as the prevailing party on the breach of contract claim.  *Matter of Sparkman*, 703 F.2d 1097, 1100 (9th Cir. 1983) ("prevailing party in a contract action is entitled to reasonable attorneys' fees if the contract specifically [so] provides...")

## C.  **Plaintiffs' Fees Requested Fees Need Not Be Apportioned.**

### 1. *The requested attorneys' fees should not be apportioned between claims.*

There is an overriding principle that, the joinder of claims "should not dilute [a party's] right to attorney's fees." *DePuy Synthes Sales, Inc. v. Stryker Corp.*, No. EDCV181557FMOKKX, 2023WL6786772, at *9 (C.D. Cal. Aug. 17, 2023), *report and*

13

**MEMORANDUM OF POINTS AND AUTHORITIES**

*recommendation adopted*, No. EDCV181557FMOKKX, 2023 WL6932584 (C.D. Cal. Sept. 6, 2023). Further, where a claim "for which attorney fees are provided by statute is joined with other . . . [claims] for which attorney fees are not permitted, … [a]ll expenses incurred on the common issues qualify for an award." *Nisbet v. Am. Nat'l Red Cross*, No. CV 16-7342-GW (ASX), 2018 WL11462272, at *8 (C.D. Cal. July 18, 2018), *aff'd*, 795 F. App'x 505 (9th Cir. 2019); *see also, N. L. by Lemos v. Credit One Bank, N.A.*, 807 F. App'x 698, 699 (9th Cir. 2020) (fees need not be apportioned where claims "share a 'common legal issue' or a 'common factual issue.'"). Moreover, "[a]ttorney's fees need not be apportioned when incurred for representation on an issue common to both a cause of action in which fees are proper and one in which they are not allowed." *G.P.P., Inc. v. Guardian Prot. Prods., Inc.*, 126 F.4th 1367, 1380 (9th Cir. 2025); *see also Thorne v. City of El Segundo*, 802 F.2d 1131, 1141 (9th Cir. 1986) (recognizing a fee award may include time spent on claims "related" to successful claims providing for attorneys' fees, *even if the "related claims" were unsuccessful*). "The test for relatedness of claims is not precise….[R]elated claims will involve 'a common core of facts' or will be based on related legal theories, while unrelated claims will be 'distinctly different,' and based on different facts and legal theories." *Thorne*, 802 F.2d at 1141 (internal citations omitted). "Thus, the test is whether relief sought on the unsuccessful claim is intended to remedy a course of conduct entirely distinct and separate from the course of conduct that gave rise to the injury on which the relief granted is premised." *Id.* (quotation omitted).

Here, Axos seeks recovery of all its attorneys' fees. First, Axos's claims all arose out of Defendants' "scheme to profit from wrongfully trading off of other banks' years of hard work and investment in developing client relationships and banking groups." (DE83 at ¶¶13-31.)  This scheme also involved encouraging Hasler and Martello to breach their contracts with Axos to aid Nano in unfairly competing with Axos (*Id.*, at ¶84.) and relying upon them to provide Nano information (including, but not limited to trade secrets) to assist in soliciting Axos's customers—and even included actively

14

interfering with Axos's relationships. (*Id.*, at ¶¶85-137.) *All* of Defendants' conduct was part of this scheme, and all of Axos's claims are therefore related.

Second, Axos's central claim was its DTSA claim. This is clear from: Defendants' decision to focus their motion for summary judgment *entirely* on the DTSA claim (*see generally*, DE129-1); Defendants' emphasis on the DTSA claim in both their Rule 50(a) Motion (DE286) and Rule 50(b) Motion (DE307); as well as the Parties' respective presentations at trial. Thus, Axos's primary focus throughout the action was to obtain documents and other information to support its DTSA claim. (Timm Decl., ¶8; DE73-2 at §II (detailing discovery efforts through February 23, 2023.) This included serving approximately 30 subpoenas to substantiate and test the completeness of Defendants' document productions (it was not), which thereafter led to Defendants' production of more than 60,000 additional documents. (DE73-2 at §II.) While these documents related to and assisted Axos in proving *all* claims, the primary focus was Axos's DTSA claim. (Timm Decl., ¶8.) Axos would have engaged in the same discovery process and tactics—including, *inter alia*, all of the same depositions—whether or not the non-DTSA claims had been alleged. (*Id.*) Thus, none of the remaining five claims tried to the jury required much independent factual development. Therefore, apportionment of the fee is not warranted. *See El-Hakem v. BJY Inc.,* 415 F.3d 1068, 1076 (9th Cir. 2005) (affirming court's decision declining to apportion fees where time spent against each defendant not grossly unequal and claims "were virtually interchangeable"); *Overrated Prods., Inc. v. Universal Music Grp. Recordings, Inc.*, No. CV 19-2899-RSWL-RAOX, 2020 WL10052853, at *6 (C.D. Cal. Mar. 24, 2020) (no apportionment needed where "claims revolve[d] around allegations that [Defendant] breached duties….or engaged in an alleged scheme" and claims were "intertwined.")

Alternatively, if the Court requires apportionment between the claims, Axos respectfully requests that the Court apportion no less than 80% of Axos's attorneys' fees expended in this matter to its DTSA claim. This apportionment is conservative given that the vast majority of the time spent litigating this case was devoted to Axos's DTSA–

15

**MEMORANDUM OF POINTS AND AUTHORITIES**

discussed above. This type of estimation is appropriate, especially in complicated intellectual property cases where "calculating an 'exact percentage' may be impossible." *Gracie v. Gracie*, 217 F.3d 1060, 1070 (9th Cir. 2000). And in practice, a granular and precise approach to apportionment based on a review of every billing entry (here contained in nearly 700 pages of invoices) is burdensome and unnecessary. *See Monster Energy Co. v. Vital Pharms., Inc.*, No. EDCV181882JGBSHKX, 2023 WL9419597, at *9 (C.D. Cal. Dec. 14, 2023) (unnecessary and "burdensome on the Court to parse through the 852 pages of Monster's fee and cost entries to determine which entries pertain to which claims" because court can apply percentage). The core of the Complaint's factual allegations concerned Defendant's misappropriation of Axos's trade secrets. (DE1) Thus, *at least* 80% of the time spent (and fees expended) were in furtherance of the DTSA claim, whether independently or jointly with the remaining claims.

## 2. *The requested attorneys' fees should not be apportioned between Defendants.*

Apportionment is not required when the claims between defendants are interchangeable. *El-Hakem*, 415 F.3d at 1075. The guiding principle of apportionment is "the *time expended* by the plaintiff in pursuing each defendant." *Corder v. Gates*, 947 F.2d 374, 382 (9th Cir.1991). The Ninth Circuit has rejected a rule apportioning attorneys' fees in accord with the losing parties' relative culpability. *Id.*, at 383 ("We have never mandated apportionment based on each defendant's relative liability under a jury's verdict.")

Here, apportionment among Defendants is unwarranted. Apportionment by relative time litigating against each defendant is generally more appropriate where there were markedly unequal efforts by each defendant. *See Id.*; *see also El–Hakem*, 415 F.3d at 1075. Not so here: the bulk of the time spent litigating was on tasks relevant to all Defendants. All Defendants were added to the case ***before:*** (1) depositions (2) written discovery was complete; (3) the MSJ was filed; and (4) the bulk trial preparation in 2024

**MEMORANDUM OF POINTS AND AUTHORITIES**

and 2025 was conducted. (Goodrich Decl., Ex. B; DE73-2.) All Defendants litigated the entire case through the same counsel, and each was a former employee of Defendant Nano. DE331-5-7. Each individual Defendant was added to the case because of their acts in connection with their work with Nano and working in concert with Nano to misappropriate Axos's trade secrets. And the timing as to when each individual Defendant was added was substantially based on when Defendants' produced documents. (*Id*.) Had Nano made its substantial document productions earlier, Axos could have added Troncale and Martello earlier.  Instead, Nano made the bulk of its document productions only after extensive subpoenas demonstrated its productsions were incomplete and ***numerous*** IDCs before the Magistrate.  (*Id*.; DE55, 57&63.) Defendants cannot now use their failure to produce documents substantiating the need to add Troncale and Martello as Defendants as a shield to allow those individuals to avoid liability—particularly where Troncale was Nano's president at the beginning of the action, and thus was involved in litigation strategy. DE331-44.

Further, each Defendant was found liable under the DTSA, which was the core claim that formed the basis of Axos's claims, Axos's trial presentation, and indeed has been the core focus of Defendants' multiple attempts to obtain judgment in their favor. (SAC ¶¶168-179, 185-187, 199-203, 211-214, 220, 230; DE129, 286, 306.) Any work done on the case before the individual Defendants were added was necessarily used to obtain the verdict against each of them.  Thus, the Court should hold each Defendant jointly and severally liable for the full amount of attorneys' fees requested.

Nonetheless, if the Court requires apportionment of fees, the apportionment should be as follows: Nano should be responsible for the full amount of the fees awarded. Hasler should be jointly and severally liable with Nano for all fees billed after Axos began preparing to add Hasler to its First Amended Complaint, which it began on or around October 20, 2020 as reflected in Axos's bills.  Troncale and Martello should be jointly and severally liable with Nano and Hasler for all fees billed after Axos began

**MEMORANDUM OF POINTS AND AUTHORITIES**

preparing its Second Amended Complaint, which it began on or around January 31, 2023 as reflected in its bills. Thus, each Defendant would be liable in total for the following amounts of attorneys' fees:

| Party | Fees Award (no claim apportionment) |
|---|---|
| Nano | $3,557,660.78 |
| Hasler | $3,204,247.78          +$70,881.50          in arbitration(total=3,275,129.28) |
| Troncale & Martello | $2,635,335.00 |

### D. The amount of fees requested is reasonable.

#### 1. *Computation of attorneys' fees using the lodestar method.*

Axos's request complies with the "lodestar method," and it seeks to recover the time counsel actually billed Axos for litigation its claims. (*See* Goodrich Decl. ¶20.) Axos seeks recovery for hours billed by primarily 2 partners and 4 associates (with assistance from 1 additional partner and 14 other associates in a limited capacity to review the nearly 100,000 documents in this case), plus 1 paralegal between March 12, 2019, when K&L Gates was retained, and July 2025. (*See Id*., ¶20, Ex. B.) These contemporaneous time records reflect the hours K&L Gates reasonably expended, which go well beyond the requirement to support a fees award. *See, e.g., Hensley,* 461 U.S. at 437 n.12. In total, Axos seeks to recover $3,573,202.91 for 7,117.1 total hours. Axos has voluntarily removed billing entries from K&L Gates's e-discovery team and many other entries Axos has decided not to seek recovery. (*Id*., at ¶20.)

Once a plaintiff has shown an entitlement to attorneys' fees, "the district court has discretion in determining the amount of the fee award." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 437 (1983) ("[t]he standards set forth in this opinion are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'"). In so determining, the district court begins by determining the presumptive lodestar figure, "by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate." *Intel Corp. v. Terabyte Int'l., Inc.*, 6 F.3d 614, 621 (9th Cir.

18

**MEMORANDUM OF POINTS AND AUTHORITIES**

1993) (*citing Hensley*, 461 U.S. at 437). "However, attorneys are 'not required to record in great detail how each minute of their time was expended.'" *United Steelworkers of Am. v. Ret. Income Plan For Hourly-Rated Emps. of ASARCO, Inc.,* 512 F.3d 555, 565 (9th Cir. 2008) (quoting *Hensley*, 461 U.S. at 437 n.12) (internal brackets omitted); *Fox v. Vice*, 563 U.S. 826, 838 (2011) ("[t]he essential goal ... is to do rough justice, not to achieve auditing perfection"). Attorneys "need only 'keep records in sufficient detail that a neutral judge can make a fair evaluation of the time expended, the nature and need for the service, and the reasonable fees to be allowed.'" *United Steelworkers of Am.,* 512 F.3d at 565. The Court should use its "overall sense of a suit," and "estimates in calculating and allocating an attorney's time" are permissible. *Fox,* 63 U.S. at 838.

The lodestar amount is only a "starting point," however, and "[t]here remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'" *Id.* at 433–34; *see also Vargas v. Howell*, 949 F.3d 1188, 1195 (9th Cir. 2020). "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified." *Id*. at 435. A court may also, for example, adjust the lodestar to account for the time and labor required, the novelty and difficulty of the questions involved, the amount involved and results obtained, the experience, reputation, and ability of the attorneys and awards in similar cases. *See Picture Shop, LLC v. Saw Inc.,* No. 2:23-CV-03075-KK (MAR), 2024 WL2106747 at *4 (C.D. Cal. Apr. 5, 2024).

A court "must start by determining how many hours were reasonably expended on the litigation," which is the time that "could reasonably have been billed to a private client." *Moreno v. City of Sacramento,* 534 F.3d 1106, 1111 (9th Cir. 2008). And "[a] client's payment of the full fee amount adds weight to the presumption of reasonableness of the lodestar." *Clark*, 2024 WL4875348 at *2. Once established, "the opposing party

19

**MEMORANDUM OF POINTS AND AUTHORITIES**

has the burden of submitting evidence challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party." *Id.* at *3. And "if opposing counsel cannot come up with specific reasons for reducing the fee request that the district court finds persuasive, it should normally grant the award in full, or with no more than a haircut." *Moreno*, 534 F.3d at 1116; *see also Billion Motors, Inc. v. 5 Star Auto Grp.*, No. 8:19-CV-00945-SVW, 2020 WL8373396, at *3 (C.D. Cal. Dec. 17, 2020) (burden shifts to opposing party to "identify with particularity the billing entries that are unreasonable").

Here, Axos complied with the lodestar method by seeking fees that K&L Gates LLP actually billed for the work relating to this action through contemporaneous time records and were paid. (Goodrich Decl., ¶20, Ex. B); *United States v. $12,248 U.S. Currency,* 957 F.2d 1513, 1521 (9th Cir. 1991) ("strong preference for contemporaneous time records."); *see also Kittok,* 687 F. Supp. 2d 953, 963 (C.D. Cal. 2009) ("Verified time statements of the attorneys, , , entitled to credence in the absence of a clear indication the records are erroneous." (citation and alteration omitted)). And pursuant to the lodestar method, that total is $3,557,660.78.

The amount of fees Axos seeks to recover in attorneys' fees includes time expended relating to this current Motion for fees through June 30, 2025. (*See* Goodrich, Decl., ¶20, Ex. A.) Axos estimates it will incur at least an additional $50,000 for time spent on this Motion after June 30, 2025. This accounts for the time spent drafting and preparing this motion and accompanying documents, but does *not* include *all* time spent preparing: the time other attorneys' spent in reviewing and revising their own declarations has not been added to the amount sought. (*See* Goodrich Decl., ¶32.) The Ninth Circuit has held that "[h]ours spent preparing a fee application are compensable." *Moran v. ESOP Comm. of Aluminum Precision Prods., Inc. Emp. Stock Ownership Plan*, No. 8:24-CV-00642 MWF (ADSX), 2025 WL1712397 at *3 (C.D. Cal. June 2, 2025) (*citing, Anderson v. Dir., Off. of Workers Comp. Programs*, 91 F.3d 1322, 1325 (9th Cir. 1996) (fees for preparing fee motion "must be included in

calculating a reasonable fee"); *Lateral Link Grp., LLC v. Springut*, No. LACV1405695JAKJEMX, 2017 WL11634389 at *3 (C.D. Cal. Feb. 14, 2017) (same).

### 2. *Axos's requested fees are reasonable.*

Axos's requested fees are also reasonable. "In determining the reasonableness of an hourly rate, courts consider the experience, skill, and reputation of the attorney requesting fees." *Hung Nguyen v. Regents of Univ. of California,* No. 8:17-CV-00423-JVS-KESX, 2018 WL6112616, at *3 (C.D. Cal. May 18, 2018) ("A reasonable hourly rate should reflect the prevailing market rates of attorneys practicing in the forum community."). Here, Axos can support the requested rates and time expended given the complexity of the case, the six years of litigation required to achieve the resulting $40 million jury verdict, the way the case was staffed, and the prevailing rates customarily charged (and awarded). (*See* Goodrich Decl. ¶19.) The timekeepers and their respective effective rates in this case are below the standard rates in California generally–and this District specifically–and the basis for such rates and time expended are well supported.[2] (*See id*, ¶20.)

*First,* the staffing on this case was reasonable, and the contemporaneous time records reflect that many of the tasks undertaken by counsel were delegated to attorneys at lower hourly rates. (*Id.*, ¶8, Ex. A.) A large percentage of time in this action was billed by Zachary Timm—the primary associate assigned to this action since prior to it being filed. (*Id.*) By utilizing Mr. Timm—who was a junior associate when the case was first filed—instead of Axos's lead trial counsel or a different more senior associate or partner, Axos was charged at a far lower hourly rate than it otherwise might have been. Mr. Timm was also primarily responsible for conducting discovery, further leveraging his lower rate. (*Id.*; Timm Decl., ¶7.) Mr. Timm and other more junior associates conducted

---

[2] While separate declarations for each attorney are not necessary, Axos nonetheless submits declarations from those who spent significant time on this matter and still employed with K&L Gates, LLP, Axos's counsel. *Kong v. Margaret M. Harris Corp.*, No. CV182112MWFFFMX, 2020 WL4018294, at *5 (C.D. Cal. Mar. 5, 2020) ("the Court is not aware of [] any authority requiring Plaintiff to submit a separate declaration for each attorney who worked in the action to authenticate the billing records.")

**MEMORANDUM OF POINTS AND AUTHORITIES**

massive document review and research, drafted motions, conducted several depositions, and more. (Goodrich Decl., ¶6; Timm Decl., ¶7.) The trial team was also composed mostly of associates (rather than all partners), reducing the amount of fees charged. (Goodrich Decl., ¶6.) In total, a large majority of the total time spent on this matter was undertaken by associates with lower billing rates.

*Second*, this was a complex intellectual property case involving complicated issues of law and fact that spanned over half of a decade. The case involved the highly specialized intersection of federal trade secret law and the banking industry. This necessitated the taking of over half a dozen depositions, issuing approximately 30 third-party subpoenas, and six years of litigation. The complexity of the case was laid bare in thousands of pages of filings in Plaintiff's oppositions to Defendants' Motion for Summary Judgment and Rules 50(a) and 50(b) Motions==each addressing complex issues under the DTSA. Defendants' litigation tactics further complicated the litigation—from ailing to timely respond to the Complaint (resulting in a default) and motion to set it aside, to repeated refusals to comply with discovery—thus necessitating third-party discovery to failing to identify or produce applicable insurance policies as part of Defendants' Rule 26 initial disclosures—thus necessitating in further third-party discovery to insurance companies to adding over a dozen new, previously undisclosed, witnesses on the eve of trial (necessitating simultaneous preparation for cross-examination of these witnesses and motion practice to exclude them); and more. (Goodrich Decl., ¶21.) The length of the litigation, amount of work required throughout and to prepare the case for trial, and the eventual result of a Plaintiff verdict on all claims and a total award of $40 million more than justifies the hours billed to the matter.

*Third,* the rates Axos seeks are counsel's actual billing rates, not mere estimates. *See Elser v. I.A.M. Nat. Pension Fund,* 579 F. Supp. 1375, 1379 (C.D. Cal. 1984) ("[T]he best evidence [of an attorney's reasonable hourly billing rate] would be the hourly rate customarily charged by the [applicant] himself or by his law firm."); *Moore v. James H. Matthews & Co.,* 682 F.2d 830, 840 (9th Cir.

**MEMORANDUM OF POINTS AND AUTHORITIES**

1982) (explaining that a lodestar multiplier should "usually [be] counsel's normal billing rate"). The rates here are not only based off of each individual timekeepers' standard rate customarily charged to clients, but actually represent *discounts* from those rates. (Goodrich Decl., ¶17.) Thus, Axos requested rates "are not pie-in-the-sky numbers that one litigant seeks to collect from a stranger but would never dream of paying itself. These are bills that [Axos] actually paid in the ordinary course of its business.'" *Metavante Corp. v. Emigrant Sav. Bank,* 619 F.3d 748, 773-74 (7th Cir. 2010); *see also* Goodrich Decl., ¶20. This fact alone is "particularly forceful" evidence that the rate is reasonable, since a sophisticated company is likely to "exercise business judgment in retaining and paying counsel." *Stonebrae, L.P. v. Toll Bros., Inc.,* 2011 WL1334444, at *6 (N.D. Cal. Apr. 7, 2011); Clark *v. InComm Fin. Servs., Inc.,* No. EDCV 22-1839 JGB (SHKX), 2024 WL4875348 at *2 (C.D. Cal. Nov. 8, 2024) (payment of invoices "adds weight to the presumption of reasonableness").

　　*Fourth,* these rates (ranging from $357-$596.74 for associates, and $684.12-$774.05 for partners, with one additional partner billing at an effective rate of $1,012.95 for a total of 6.1 hours of work pertaining to his expertise in insurance-related issues) track the "rate determinations in other cases" in California. *Welch v. Metro. Life Ins. Co.,* 480 F.3d 942, 946 (9th Cir. 2007) (rates "should be established by reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity.") For example, in recent years numerous courts in the Central District of California have found similar rates to be reasonable. *See e.g., Monster Energy Co. v. Vital Pharms*., Inc., 2023 WL8168854, at *23 ($1,042 for litigation partners and $806 for associates reasonable hourly rate); *Billion Motors, Inc. v. 5 Star Auto Grp.,* No. 8:19-CV-00945-SVW, 2020 WL8373396, at *2 (C.D. Cal. Dec. 17, 2020) ($810 and $715 for partners and $535 for an associate reasonable)*; SAS v. Sawabeh Info. Servs. Co.*, No. CV 11-4147 MMM MANx, 2015 WL12763541, at *22–23 (C.D. Cal. June 22, 2015) ($150 to $275 for support staff). In fact, even in cases decided prior to 2020 similar rates have been found

23

**MEMORANDUM OF POINTS AND AUTHORITIES**

reasonable. *See e.g. Perfect 10, Inc. v. Giganews, Inc.,* CV 11- 07098-AB (SHX), 2015 U.S. Dist. LEXIS 53681, 2015 WL1746484, at *20-22 (C.D. Cal. Mar. 24, 2015) ($610-$930 for partners, $360-$690 for associates, and $345 for a paralegal reasonable in IP case); *Kolay Flooring Int'l, LLC v. Milliken & Co*., No. 2:18-CV-00640-SVW-KS, 2019 WL3059276, at *4 (C.D. Cal. Mar. 6, 2019) ($850-$1,000 for partners, $450-$525 for associates, and $375 for a paralegal reasonable in IP case, and "especially so given that they reflect a 19% discount").

Relatedly, the reasonableness of Axos's requested rates are supported by "survey data." *In re Toys R Us-Delaware, Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.,* 295 F.R.D. 438, 461 (C.D. Cal. 2014). For example, K&L Gates utilized a third-party to prepare a market survey of rates charged by comparable firms for intellectual property litigation work in Los Angeles from 2019 through present, the results of which demonstrate that the effective rates for both the associates and partners on this action were at, and in most cases well below, both the median and average standard rates and actually billed rates. (*Compare* Goodrich Decl., ¶15; *with Id*., at ¶20, Ex. B.) Survey data referenced in the caselaw **almost a decade ago** similarly demonstrates the reasonableness of the rates billed in this action. *See, e.g.; Logtale, Ltd. v. IKOR, Inc.,* 2016 WL7743405, at *1 (N.D. Cal. Oct. 14, 2016) (summarizing data from 2016 that showed that associate rates ranged "[f]rom $600 to $770" and partner rates ranged "[f]rom $760 to $1,300"). And as discussed below, rates have only risen since that time.

*Fifth* and finally, a declaration of a party's attorney regarding prevailing billing rates in the district in which the Court sits and rate determinations in other cases is "satisfactory evidence of the prevailing market rate." *Facet Techs., LLC v. LifeScan, Inc.,* No. 222CV1717MCSMAR, 2024 WL1699355, at *3 (C.D. Cal. Jan. 17, 2024); *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990) (same). Here, the Goodrich declaration shows that Axos's requested rates are reasonable and in-line with the prevailing market rates. (Goodrich Decl., ¶21.) Further, Axos

24

**MEMORANDUM OF POINTS AND AUTHORITIES**

provides declarations from the other timekeepers who spent significant time working on this case, which detail the work they performed on this case and information about their work experience as well as links to their online biographies to demonstrate their rates are reasonable in light of their experience.

Accordingly, Plaintiffs' request for $3,557,660.78 in attorneys' fees—$3,573,202.91 for time expended through June 30, 2025, and $50,000.00 in estimated fees incurred after that date relating to this Motion.  This number is a reasonable amount given all the applicable circumstances.

### 3. *Axos is further entitled to fees incurred in a prior arbitration against Hasler.*

Axos further seeks to recover fees incurred by its counsel (Andrews Lagasse) for Axos's DTSA claim against Hasler, which was initially initiated in arbitration and later moved to this action.  Hasler filed an arbitration pursuant to an agreement with Axos on September 10, 2018. (DE41.) Axos filed a first amended cross-complaint against Hasler on August 28, 2019, asserting claims for trade secret misappropriation, breach of contract, interference claims, and unfair competition arising out of the same facts as this Action. (*Id.*) The Parties thereafter agreed to consolidate the aforementioned cross-claims against Hasler into this Action, and filed a stipulation to that effect (*id.*), which this Court granted on October 15, 2021. (DE42.) The work performed by Andrews Lagasse (a smaller, San Diego based law firm hired to defend the labor and employment claims with commensurately lower rates) in that prior arbitration was transferred to this action and directly related to Axos's pursuit (and jury verdict) on those same claims in this action–making fees incurred for that work recoverable. *See, e.g., Dishman v. UNUM Life Ins. Co. of Am.,* 269 F.3d 974, 987 (9th Cir. 2001)

Axos incurred at least $70,881.50 in fees from Andrews Lagasse in reasonably and necessary pursuing claims against Hasler that were later transferred into this Action, including Axos's claim under the DTSA. (Goodrich Decl., ¶23, Ex. C.) All counsel were collaborating in the case in federal court and on the arbitration cross-claim, and the work

25

done in that arbitration was carried over into the federal court action. The rates charged by Andrews Lagasse were less than the rates charged by K&L Gates, and are reasonable for the same reasons noted above.

### E. Axos is entitled to its non-taxable costs under the DTSA.

Defendants' willful and malicious trade secret misappropriation under the DTSA further entitles Axos to its non-taxable costs. The Ninth Circuit has "long interpreted the phrase 'reasonable attorney's fees' to include certain litigation expenses." *Grove v. Wells Fargo Fin. California, Inc.*, 606 F.3d 577, 580 (9th Cir. 2010). And, as a result, the Ninth Circuit "repeatedly [has] allowed prevailing plaintiffs to recover non-taxable costs where statutes authorize attorney's fees awards to prevailing parties." *Id*. As noted above, the DTSA authorizes attorneys' fees to the prevailing party upon a finding of willful and malicious misappropriation. *See* 18 U.S.C. §1836(b)(3)(D). The jury found that each of the Defendants' misappropriation was willful and malicious, and Axos "can thus recover reasonable out-of-pocket litigation expenses that would normally be charged to a fee paying client, even if the court cannot tax these expenses as 'costs' under 18 U.S.C. §1920." *Monster Energy Co. v. Vital Pharms., Inc.*, 2023 WL8168854, at *23; (*see also* DE305 at §I).

Axos seeks reimbursement for the following costs, each of which this Court has previously recognized as recoverable under the DTSA: (1) $33,170.71 for non-transcript deposition court reporting expenses, including costs for video depositions and recordings (as well as real-time technology). *See Monster Energy Co*., at 2023 WL8168854, at *24 (*citing Soler v. County of San Diego*, 2021 WL2515236, at *13 (S.D. Cal. June 18, 2021)); (2) $5,250.00 in mediation fees. *See, id.* (*citing Wyatt Tech. Corp. v. Malvern Instruments, Inc.,* No. CV 07-8298 ABC (RZX), 2010 WL11404472, at *3 (C.D. Cal. June 17, 2010), aff'd, 526 F. App'x 761 (9th Cir. 2013)); (3) $29,764.82 in costs for room and tax for hotel stays at trial. *See, id.* (*citing, Harris v. Marhoefer*, 24 F.3d 16, 19–20 (9th Cir. 1994)); (4) $72,866.28 in outside trial graphics vendor costs. *See, id.* (*citing Cornell Univ. v. Hewlett-Packard Co.*, 2009 WL1405208, at *2

26

(N.D.N.Y. May 15, 2009)).  Axos further seeks reimbursement of: (5) $20,986.55 in *non-taxable* photocopying, document processing, messenger, and delivery costs; (6) $8,401.05 in additional travel expenses; and (7) $404.82 in computerized research costs, each of which are also frequently awarded as non-taxable costs.  *See, e.g., Wyatt Tech. Corp.*, 2010 WL11404472, at *2-3 (collecting cases). In total, Axos seeks $170,439.41 in non-taxable costs.

### F.    Axos is entitled to pre-and-post-judgment interest on its claims.

Axos also seeks pre-and-post-judgment interest on all claims.

Axos is entitled by statute to prejudgment interest on its state law claims beginning on "the day on which damages were made certain." *Monster Energy Co.*, 2023 WL8168854, at *18; *see also*, CCP §3287(a).  "California requires an interest rate of 7% for the calculation of prejudgment interest for tort claims."  The jury awarded Axos $20 million on its claims for interference, resulting in a daily interest accrual of $3,835.62. And as discussed below, Axos's damages were made certain *at least* as of the date of the filing of the Complaint, 2125 days later, on July 31, 2025.  DE355.  Axos is therefore entitled to *at least* $8,150,684.93 of prejudgment interest on its interference claims ($20,000,000*7%/365*2125).

On the DTSA claim, "federal common law authorizes the award of such interest in appropriate cases to victims of violations of federal law." *See Monster Energy Co.*, 2023 WL8168854, at *15 (*quoting Anhing Corp. v. Thuan Phong Co.*, 2016 WL6661178, at *3 (C.D. Cal. Jan. 25, 2016)).  "Courts may allow prejudgment interest even though the governing statute is silent." *Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1550 (9th Cir. 1989). Here, the jury found that Defendants were liable for $20 million in Axos's lost profits and $20 million in unjust enrichment.

Federal courts across the country calculate DTSA prejudgment interest–including on lost profits and unjust enrichment–from as ***early*** as the date of the misappropriation (or accrual of the claim) and as ***late*** as the filing of the Complaint. *See, e.g., Harbor Compliance Corp. v. Firstbase.IO, Inc.,* No. 5:23-CV-0802, 2025 WL383804, at *26

27

**MEMORANDUM OF POINTS AND AUTHORITIES**

(E.D. Pa. Feb. 4, 2025)(after concluding an earlier date of accrual could not be determined, awarding "pre-judgment interest at a rate of 6% as of the date of the filing of the Complaint."); *AgroFresh Inc. v. Essentiv LLC*, No. 16-662 (MN), 2020 U.S. Dist. LEXIS 222898, at *84 (D. Del. Nov. 30, 2020)(awarding prejudgment interest as of date of complaint on compensatory damages *and* unjust enrichment); *Compulife Software, Inc. v. Rutstein,* No. 9:16-CV-80808-BER, 2021 WL5830554, at *1 (S.D. Fla. Oct. 20, 2021), aff'd sub nom. *Compulife Software, Inc. v. Newman*, 111 F.4th 1147 (11th Cir. 2024)(awarding prejudgment interest on DTSA claim starting when complaint was filed); *see also Sec. & Exch. Comm'n v. Hurd,* No. CV1304464RGKJCGX, 2014 WL12561073, at *8 (C.D. Cal. Feb. 21, 2014)(awarding prejudgment interest on unjust enrichment award for violation of federal law).[3] Thus, Axos seeks to follow the national trend by requesting prejudgment interest at a rate equal to the weekly average 1-year constant maturity treasury yield as of the entry of judgment (4.08%) to begin when Axos's claim accrued and the misappropriation began–which was no later than April 1, 2018, when Xchange Solutions, Inc. moved its 1031 deposit accounts to Nano *per Nano's own documentation* (2704 days ago). DE331-66 (Trial-Exhibit 273); DE331-70 (Trial-Exhibit 401(Dr. Cragg's slides) at 34).   The later possible date would be September 1, 2018, which was the last date any of the 15 customers for which Axos sought direct lost profit *and* unjust enrichment damages moved their accounts to Nano (2551 days ago). *Id.* And at a minimum, the Court can follow the guide of other courts unable to determine the date of claim accrual and begin prejudgment interest on the day the Complaint was filed (2125 days ago), which would equal $9,501,369.86 ($40,000,000*4.08%/365*2125), or $10,485,991.76 when compounding annually. *See, e.g., CH2O, Inc. v. Meras Eng'g, Inc.,* No. LACV1308418JAKGJSX, 2020

---

[3] Although this Court has considered prejudgment interest on a DTSA claim before and used state law as a guide, as the Court observed, the plaintiff there failed to provide this Court with *any* federal court authority on when prejudgment interest begins. . *Monster Energy Co.*, 2023 WL8168854, fn 9. Here, Axos has provided several federal court cases confirming that prejudgment begins as *late* as the filing of the Complaint.

**MEMORANDUM OF POINTS AND AUTHORITIES**

WL13388230, at *16 (C.D. Cal. Apr. 6, 2020) ("Courts have approved compounding interest annually, or quarterly.")

Likewise, under 28 U.S.C. 1961, Axos is also entitled to ***post***-judgment interest "calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield," which was 4.08%. Thus, Axos should be awarded $4,471.23 per day in post-judgment interest from July 31, 2025, until the date that the judgment is paid in full ($40,000,000*4.08%/365 per day), which "shall compound annually." 28 U.S.C. 1961. And for the same reason, Axos should also receive post-judgment interest on its attorneys' fees award added to the judgment.

## V.    **CONCLUSION**

In light of the foregoing, the Court should grant Axos's Motion.

**K&L GATES LLP**

DATED: August 25, 2025

By: */s/ Christina N. Goodrich*

Christina N. Goodrich
Zachary T. Timm
Connor J. Meggs
Lauren E. Elvick

*Attorneys for Plaintiff Axos Bank*

29

**MEMORANDUM OF POINTS AND AUTHORITIES**

## LOCAL RULE 11-6.1 CERTIFICATION

The undersigned, counsel of record for Plaintiff Axos Bank, certifies that this brief contains 6,792 words, which complies with the word limit of L.R. 11-6.1.

DATED: August 25, 2025

**K&L GATES LLP**

By: */s/ Christina N. Goodrich*
Christina N. Goodrich
Zachary T. Timm
Connor Meggs
Lauren E. Elvick

30

**MEMORANDUM OF POINTS AND AUTHORITIES**