**K&L Gates LLP**
10100 Santa Monica Boulevard
Eighth Floor
Los Angeles, California, 90067
Telephone: 310.552.5000
Facsimile: 310.552.5001

Christina N. Goodrich (SBN 261722)
christina.goodrich@klgates.com
Zachary T. Timm (SBN 316564)
zach.timm@klgates.com
Connor J. Meggs (336159)
connor.meggs@klgates.com

Attorneys for Plaintiff
AXOS BANK

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| AXOS BANK, a federally chartered savings bank,<br><br>              Plaintiff,<br><br>v.<br><br>NANO BANC, a California corporation; *et al.*,<br><br>              Defendants. | Case No.: 5:19-cv-02092-JGB-SHKx<br><br>[Assigned to the Hon. Jesus G. Bernal]<br><br>**PLAINTIFF AXOS BANK'S OPPOSITION TO DEFENDANT NANO BANC'S MOTION FOR APPROVAL OF BOND AND STAY OF ENFORCEMENT PURSUANT TO FRCP 62; DECLARATION OF ZACHARY T. TIMM**<br><br>Hearing Date:  November 24, 2025<br>Time:              9:00 a.m.<br>Courtroom:      1 |

**OPPOSITION TO DEFENDANT NANO BANC'S MOTION FOR APPROVAL OF BOND**

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................5

II.   JUDICIAL STANDARD.........................................................................9

III.  ARGUMENT .........................................................................................9

    A.    The Court cannot stay enforcement based on Nano's bond because it is based on the pendency of an appeal that is not effective given the pending Rule 59 Motion.................................................................. 9

    B.    Nano's proposed bond does not sufficiently protect Axos's interests as required by Rule 62 ................................................................. 11

    C.    Nano's bond is insufficient to cover all outstanding amounts Nano owes, plus interest, costs (already incurred and on appeal) and other relief, and should not be approved. ......................................... 12

        1.   The purpose of a bond is to protect the appellee, and ensure it is sufficient to cover the total amount that appellant will owe. ........ 12

        2.   The Judgment against Nano is $14 Million, and it is the starting point to consider when determining any bond Nano must post. ... 15

        3.   Nano's proposed bond is insufficient to cover the total amount Nano will owe and ensure the purposes of the bond requirement are met.................................................................................. 17

    D.    The Individual Defendants—Troncale, Hasler, and Martello—have not requested Court approval of, or posted, a bond nor have they sought a stay. .......................................................................... 21

IV.   CONCLUSION ...................................................................................23

2

**TABLES OF CONTENTS AND AUTHORITIES**

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Ass'n of Naturopathic Physicians v. Hayhurst*,
    227 F.3d 1104 (9th Cir. 2000), as amended on denial of reh'g (Nov. 1,
    2000) ........................................................................................................13

ang v. Sagicor Life Ins. Co.,
    No. EDCV171563JGBKKX, 2019 WL 6434766 (C.D. Cal. July 10, 2019)17

*Bennett v. Franklin Res., Inc.*,
    360 F. Supp. 3d 972 (N.D. Cal. 2018), *aff'd sub nom. Bennett v. Islamic
    Republic of Iran*, 778 F. App'x 541 (9th Cir. 2019) ......................................23

*Colen v. Cnty. of Riverside*,
    No. 5:24-CV-02081-SRM-JDE, 2025 WL 2373263 (C.D. Cal. May 12,
    2025) ........................................................................................................10

*Cotton ex rel. McClure v. City of Eureka, Cal.*,
    860 F. Supp. 2d 999 (N.D. Cal. 2012) ................................................9, 13

*Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*,
    636 F.2d 755 (D.C. Cir. 1980) .............................................................13, 22

*Griggs v. Provident Consumer Disc. Co.*,
    459 U.S. 56, 103 S. Ct. 400 (1982) ...........................................................10

*In re Jerold Meints*,
    No. EDCV 14-2152 JGB .............................................................................17

*Kaneka Corp. v. SKC Kolon PI, Inc.*,
    No. CV 11-3397 JGB (RZX), 2017 WL 11643347 (C.D. Cal. June 30,
    2017) ....................................................................................................20, 22

*Lowther v. City of Newport Beach*,
    No. 8:21-CV-02084-JVS(DFMX), 2023 WL 9375110 (C.D. Cal. Nov. 2,
    2023), *appeal dismissed*, No. 24-2185, 2024 WL 3325704 (9th Cir. Apr.
    26, 2024) ....................................................................................................10

*Mooney v. Roller Bearing Co. of Am., Inc.*,
    No. 2:20-CV-01030-LK, 2024 WL 664402 (W.D. Wash. Feb. 16, 2024) ...14

*N.L.R.B. v. Westphal*,
    859 F.2d 818 (9th Cir. 1988) ....................................................................13

*Pac. Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.*,
    935 F.2d 1019 (9th Cir. 1991) .............................................................13, 16

*Rachel v. Banana Republic, Inc.*
    831 F.2d 1503 (9th Cir. 1987) ....................................................................13

**TABLES OF CONTENTS AND AUTHORITIES**

*Sagicor Life Ins. Co. v. Jang*,
    No. EDCV192028JGBKKX, 2022 WL 17328237 (C.D. Cal. Oct. 27,
    2022) ...................................................................................................... 6, 15

*Schroeder v. McDonald*,
    55 F.3d 454 (9th Cir. 1995) .................................................................. 10, 11

*Trautt v. Keystone RV Co.*,
    No. 2:19-CV-00342-RAJ, 2021 WL 4860810 (W.D. Wash. Oct. 19, 2021) 14

*Voice v. Stormans Inc.*,
    757 F.3d 1015 (9th Cir. 2014) ................................................................... 20

*WB Music Corp. v. Royce Int'l Broad.*,
    No. EDCV16600JGBDTBX, 2018 WL 6265000 (C.D. Cal. Oct. 4, 2018) . 17

*Wishtoyo Found. v. United Water Conservation Dist.*,
    No. CV 16-3869-DOC-PLA, 2019 WL 8226058 (C.D. Cal. Apr. 11,
    2019) ............................................................................................ 9, 13, 14, 20

*Zhongtie Dacheng (Zhuhai) Inv. Mgmt. Co. v. Yan*,
    No. SACV 22-461-KK-ADSX, 2024 WL 5670682 (C.D. Cal. Dec. 9,
    2024) ......................................................................................... 9, 13, 20, 22

*Zoellner v. City of Arcata*,
    No. 3:18-CV-04471-JSC, 2024 WL 4700633 (N.D. Cal. Nov. 5, 2024) .. 9, 23

**Statutes**

Cal. Code Civ. Proc. § 917.1(b) ................................................................... 14

**Rules**

Fed. R. App. P. 39 ........................................................................................ 20

Fed. R. App. P. 4 .................................................................................... 10, 11

Fed. R. Civ. P. 59 ................................................................................... 10, 16

Fed. R. Evid. 606(b) ................................................................................ 6, 15

**TABLES OF CONTENTS AND AUTHORITIES**

# I.  **INTRODUCTION**

Beginning in 2017, Defendants engaged in a concerted scheme to pilfer Axos's trade secrets and customers for their own benefit.[1]  This caused Axos substantial damage.  Throughout the six years of this litigation, Defendants attempted to avoid accepting responsibility for the damage that they caused.  The jury put a stop to this by awarding Axos $40 million, $14 million of which was solely against Nano.  After entry of Judgment, but before filing its pending Rule 59 Motion for New Trial or to Alter Judgment, Defendants filed a Notice of Appeal.  The Ninth Circuit has stayed the appeal pending resolution of that Motion.  Notwithstanding, Nano now seeks to stay enforcement of the Judgment against it based on that appeal.  But there are problems with Nano's Motion to Stay.

First, Nano's Notice of Appeal was not effective and, thus, any bond posted based on such appeal would not be effective.  It is well-settled that the filing of a Rule 59 Motion tolls the time to file a notice of appeal.  It is similarly well-settled that the Ninth Circuit lacks jurisdiction while such motion is pending.  Here, the Ninth Circuit recognized this and stayed proceedings in the Circuit (other than those related to mediation) pending resolution of the pending motions, including Defendants' Rule 59 Motion.  Thus, Nano's Notice of Appeal is not effective and cannot form the basis for a viable bond—indeed, the bond would presumably not become effective until the Notice of Appeal is effective, which will occur (if at all) after the Court rules on the pending Rule 59 Motion.

Second, Nano's proposed bond is insufficient, on its face, to protect Axos's interests.  The Power of Attorney and Certificate of Authority of the surety itself, for example, expire in 2026.  Any appeal, however, is likely to last well beyond those

---

[1] Plaintiff Axos Bank ("Axos"); Defendants Nano Banc ("Nano"); Robert Hasler ("Hasler"), Mark Troncale ("Troncale"), and Shelby Martello, formerly known as Shelby Pond ("Martello") (collectively, the "Individual Defendants") (jointly with Nano, the "Defendants"); Nano's Motion for Approval of Bond and to Stay Enforcement (the "Motion"); Axos's Motion for Attorneys' Fees, Costs, and Pre- and Post—Judgment Interest ("Axos's Fees Motion")

**OPPOSITION TO DEFENDANT NANO BANC'S MOTION FOR APPROVAL OF BOND**

respective expiration dates, and if one or both are not renewed, the bond would not be viable. Both of these issues raise questions regarding the actual security Nano's proposed bond provides Axos, and must therefore be satisfactorily addressed prior to any stay becoming effective.

Third, Nano has not posted a sufficient bond to protect Axos during the approximately 2 years it may take to resolve Nano's appeal, particularly given Nano's repeated assertions of financial instability. Indeed, Nano's bond does not even cover the full amount of Nano's liability as of today. Nano requests approval of a bond in the amount of $17,574,335.00 (which is approximately 125% of the $14 million Judgment against Nano, plus some post-judgment interest)—but this amount does not satisfy the purpose of Rule 62(b)'s bond requirement.[2]

Rule 62(b)'s requirement is in place to protect prevailing parties, like Axos, from a loss resulting from the stay of execution. The bond must be enough to cover the Judgment, interest, costs and any other relief that may be awarded. Since entry of Judgment, the Clerk has taxed costs in favor of Axos in the amount of $37,854.94. Axos filed its Motion seeking $14,284,973.45 for attorneys' fees, non-taxable costs, and pre-judgment interest, as well as post-judgment interest to accrue at 4.08%, which the Judgment expressly notes will be determined by motion. Defendants appear to have *conceded* in their Opposition to that Motion that Axos is entitled to $3,470,533.38 in fees and costs, as well as Axos's entitlement to post-judgment interest.[3] That means

---

[2] Nano's Motion makes a confusing and meritless argument that the bond amount is actually "more than double that typically required." (DE 412 at 4:24-25.) The Judgment awards $14 million against Nano. (DE 355.) Nano, however, believes the Judgment should be $7 million. (*See, e.g.,* DE 366; DE 412 at 4:2.) Nano cites no Order from this Court amending the Judgment to $7 million. There is none. Thus, Nano's argument about a $7 million Judgment (which relies on an inadmissible declarations that violate the longstanding no impeachment rule) are irrelevant. (*See, e.g.,* DE 394 at §III.A; DE 412 at 3:26-4:5, 4:28-5:3); *see also, e.g., Sagicor,* 2022 WL 17328237, at *2-3 (striking juror affidavit as being "categorically barred under FRE 606(b)").

[3] Defendants calculated the rate using the incorrect date—having used the date of their Opposition to Axos's Fees Motion to identify the weekly average 1-year constant maturity Treasury yield, rather than the date of entry of Judgment as required by 28 U.S.C. § 1961.

6

**OPPOSITION TO DEFENDANT NANO BANC'S MOTION FOR APPROVAL OF BOND**

Defendants have conceded they owe Nano an additional $3,508,388.32, for a total of $17,508,388.32 (including the taxable costs) when added to the $14 million Judgment. An appeal of this matter could last up to 2 years, during which time post judgment interest of $1,564.93 will accrue daily based on the current $14 million Judgment against Nano, for a two-year total of approximately $1,142,400.00 in post-judgment interest. That means that any bond amount must be sufficient to cover *at least* $18,650,788.32.[4] Importantly, that number **already exceeds Nano's proposed bond**.

That calculation, though, actually *grossly underestimates* the amount needed to protect Axos from further loss, particularly given Nano's current suggestion of upcoming action against the bank. Assuming the Court *only* grants Axos's Fees Motion as to the amounts Defendants concede, and adds *only* that amount and the taxable costs to the Judgment, the amended judgment against Nano will be $17,508,388.32, which will result in post-judgment interest accruing at a daily rate of $1,957.10. If this Court were to grant Axos's Fees Motion and enter an amended judgment on, for example, December 15, 2025, when it is currently set to be heard, post-judgment interest based on the $14 million judgment will have already accrued in the amount of $186,226.85. Post-judgment interest on a 2-year appeal from that point, meanwhile, would be an additional $1,428,684.49, for a total liability of $19,145,208.70;[5] well over Nano's proposed bond amount. If the Court grants Axos's Fees Motion in full, the result is even more staggering. A complete grant of Axos's Fees Motion would result in a Judgment against Nano in the amount of $28,322,828.39,[6] resulting in $3,165.95 in daily post-judgment

---

[4]  $14 million Judgment, plus $37,854.94 in taxable costs already awarded, plus $3,470,533.38 in fees and costs Defendants concede Axos is entitled to, plus $1,142,400.00 in post-judgment interest.

[5]  $14 million Judgment, plus $37,854.94 in taxable costs already awarded, plus $3,470,533.38 in fees and costs Defendants concede Axos is entitled to, plus $208,135.89 in post-judgment interest accrued through December 15, 2025 at a rate of $1,564.93, plus $1,428,684.49 for 2 years of post-judgment interest on the amended judgment amount.

[6]  $14 million current Judgment, plus $14,284,973.45 in fees, costs, and pre-judgment interest sought in the Fees motion, plus $37,854.94 in taxable costs already awarded.

**OPPOSITION TO DEFENDANT NANO BANC'S MOTION FOR APPROVAL OF BOND**

interest.  Once again assuming the amended Judgment is entered on December 15, 2025, and a 2-year appeal from that point, that would result in an additional $2,311,142.80 in post-judgment interest, and a total award against Nano in the amount of $30,842,107.80.[7]  And that number would be even further increased by Axos's costs and attorneys' fees incurred on appeal.  Regardless of how the total is calculated, therefore, it is clear that the bond Nano proposes is significantly insufficient to cover such liability and protect Axos against further loss.

Axos informed Nano on October 3 that a 125% bond was insufficient, but that a bond of 150% of the $14 million judgment would be acceptable.  Axos explained during a call and later in an email that Axos's proposal would better protect it as to the full amount Nano owes and will owe, and is in line with other courts and the state rules.  Nano refused Axos's offer.  Five days later, on October 8, 2025, Nano filed its *Ex Parte* Application to for Approval of Bond—asserting immediate relief was necessary because, in the absence of such relief, "federal regulators will be shutting down and taking over Defendant Nano Banc immediately, within the next 24-48 hours."  (DE 404, at 4:9-13.)  Defense counsel also conveyed this message to Axos's counsel by email on October 8, 2025.  (Declaration of Zachary Timm ("Timm Decl."), Ex. A.)  Axos promptly filed an Opposition to that *Ex Parte* Application on October 9, 2025.  (DE 405.)  On October 13, 2025, Nano filed what it purported to be a "Reply in Support of *Ex Parte* Application."  (DE 406.)  Two weeks later, apparently not having been shut down and taken over by federal regulators, Nano filed its Motion asserting identical arguments in support of its proposed bond (though removing the purported need for immediate *ex parte* relief).  (DE 412.)  Axos's proposed bond was insufficient on October 3, 2025, remained insufficient when Nano filed its *Ex Parte* Application on October 8, 2025, remained insufficient when Nano filed its Motion on October 22, and will remain insufficient moving forward.

___

[7] $28,322,828.39 in amended judgment, plus $208,135.89 in pre-December 15 post-judgment interest, plus $2,311,142.80 in post-December 15 post-judgment interest.

**OPPOSITION TO DEFENDANT NANO BANC'S MOTION FOR APPROVAL OF BOND**

Finally, any stay resulting from Nano posting a bond shall only apply to Nano, because the Individual Defendants have not sought Court approval for, nor posted, a bond and have not sought a stay of enforcement. (*See generally*, DE 412.) The Motion seeks approval only of ***Nano's*** bond and stay of enforcement efforts only ***as to Nano***. (*Id.*, at 5:6-11.)  This is consistent with the Notice of Undertaking Defendants filed to inform this Court (and Axos) that ***Nano*** has obtained a bond and the Undertaking itself. (*See, e.g.,* DE 402; DE 412-2.)  Thus, because Nano is seeking a stay and posting a bond *only* as to itself, the Court should not stay enforcement as the Individual Defendants.

## II.    JUDICIAL STANDARD

Pursuant to Federal Rule of Civil Procedure 62(b), "a party may obtain a stay by providing a bond or other security. The stay takes effect when the court ***approves*** the bond or other security and remains in effect for the time specified in the bond or other security."  Fed. R. Civ. P. 62(b) (emphasis added).   "The amount of the supersedeas bond is in the Court's discretion." *Wishtoyo Found. v. United Water Conservation Dist.*, No. CV 16-3869-DOC-PLA, 2019 WL 8226058, at *2 (C.D. Cal. Apr. 11, 2019) (citing *Rachel*, 831 F.2d at 1505 n.1)  That notwithstanding, "the amount of the bond should be sufficient to pay the judgment plus interest, costs and any other relief (e.g. attorney fees) the appellate court may award." *Zhongtie Dacheng (Zhuhai) Inv. Mgmt. Co. v. Yan*, No. SACV 22-461-KK-ADSX, 2024 WL 5670682, at *9 (C.D. Cal. Dec. 9, 2024) (quoting *Cotton ex rel. McClure v. City of Eureka, Cal.*, 860 F. Supp. 2d 999, 1027 (N.D. Cal. 2012)).  And "The moving party typically bears the burden of demonstrating the reasons for a departure from the full security supersedeas bond." *Zoellner v. City of Arcata*, No. 3:18-CV-04471-JSC, 2024 WL 4700633, at *2 (N.D. Cal. Nov. 5, 2024).

## III.    ARGUMENT

### A.    The Court cannot stay enforcement based on Nano's bond because it is based on the pendency of an appeal that is not effective given the pending Rule 59 Motion.

Nano's Notice of Appeal was ineffective as a matter of law and, thus, its bond is

9

not effective unless and until that Notice of Appeal becomes effective—which will be no earlier than the Court's decision on Defendants' Rule 59 Motion. Specifically, Nano's proposed bond is expressly conditioned upon Nano's appeal. (*See* DE 412-2 at 5.) But, as discussed below, Nano's Notice of Appeal was ineffective, which renders its bond pending appeal similarly ineffective.

It is well-settled that a Notice of Appeal filed while a Rule 59 Motion is pending is premature and ineffective until entry of the Order on that Motion. The Supreme Court has previously recognized that, where a Rule 59 motion is filed after a notice of appeal, "The appeal simply self-destructs. … Moreover, a subsequent notice of appeal is also ineffective if it is filed while a timely Rule 59 motion is still pending." *See Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 61, 103 S. Ct. 400, 403 (1982). More recent Ninth Circuit authority provides that, following the 1993 amendment of Appellate Rule 4(a)(4), "when a notice is prematurely filed, it shall be in abeyance and become effective upon the date of entry of an order disposing of the Rule 59(e) motion." *Schroeder v. McDonald*, 55 F.3d 454, 458 (9th Cir. 1995); *see also,* Fed. R. App. P. 4(a)(4)(B) ("If a party files a notice of appeal after the court announces or enters a judgment--but before it disposes of any motion listed in Rule 4(a)(4)(A)--the notice becomes effective to appeal a judgment or order, in whole or in part, when the order disposing of the last such remaining motion is entered."); *Colen v. Cnty. of Riverside*, No. 5:24-CV-02081-SRM-JDE, 2025 WL 2373263, at *2 (C.D. Cal. May 12, 2025) (notice of appeal is held in abeyance until Rule 59 motion is resolved); *Lowther v. City of Newport Beach*, No. 8:21-CV-02084-JVS(DFMX), 2023 WL 9375110, at *1 (C.D. Cal. Nov. 2, 2023), *appeal dismissed*, No. 24-2185, 2024 WL 3325704 (9th Cir. Apr. 26, 2024) (same).

Here, Nano's pending Rule 59 Motion renders its Notice of Appeal ineffective, and the bond based on that appeal ineffective as a result. Nano filed its Notice of Appeal on September 2, 2025. (DE 369.) At that time, Defendants had also filed their Rule 59 Motion (DE 366) and Axos had filed its own Motion for Attorneys' Fees, Costs, and Pre- and Post-Judgment Interest (DE 361). Defendants' time to file their notice of

**OPPOSITION TO DEFENDANT NANO BANC'S MOTION FOR APPROVAL OF BOND**

appeal, therefore, had not yet begun to run. *See, e.g.* Fed. R. App. P. 4(a)(4). Thus, Defendants' Notice of Appeal was premature and ineffective—and remains held in abeyance only to become effective, if ever, *after* the currently-pending motions are decided. *See, e.g.,* Fed. R. App. P. 4(a)(4)(B); *Schroeder*, 55 F.3d at 458. Indeed, the Ninth Circuit recognized this and stayed the appeal (other than regarding mediation). (*See, e.g.,* Ninth Circuit Case No. 25-5563 at DE 3.1; *see also*, Timm Decl., Ex. C.)

Nano's proposed bond cannot be effective unless and until Nano's appeal becomes effective, which it currently is not as noted above. Thus, that bond cannot satisfy Rule 62's requirement for a bond to be posted at this time, and cannot support a stay. *See* Fed. R. Civ. P. 62(b). Further, while it is possible that Nano's appeal will become effective immediately upon the orders on the pending Rule 59 motions (DE 361 & 366), it is also possible that the Court's ruling on such motions result in an altered judgment that nullifies Defendants' Notice of Appeal, or that results in Nano's abandonment of the same. In that scenario, the bond will *never* become effective, and Axos will remain entirely unprotected.

**B.      Nano's proposed bond does not sufficiently protect Axos's interests as required by Rule 62**

*Even if* Defendants' previously filed Notice of Appeal becomes effective, thereby rendering Nano's proposed bond effective, it still offers insufficient protections for Axos. For example, the proposed bond does not allow collection in the event the appeal is dismissed, withdrawn, abandoned, or never refiled/timely filed nor in any other circumstances than those related to appeal. (DE 412-2.) As such, if Nano were to, *inter alia*, abandon its appeal, Axos will not be able to collect on the bond. If a stay is entered in reliance on Nano's proposed bond, Axos will not be able to engage in efforts to execute on the Judgment in the meantime. Then, if Nano is unable to pay the Judgment against it at the time it abandons its appeal, Axos will be left without recourse.

Further, the proposed bond is insufficient, on its face, because it may not survive through the resolution of any and all potential appeals. Specifically, the Certificate of

**OPPOSITION TO DEFENDANT NANO BANC'S MOTION FOR APPROVAL OF BOND**

Authority of the Surety expires on July 31, 2026. (DE 412-2 at 8.) The Power of Attorney similarly expires on April 23, 2026. (DE 412-2 at 7.) As addressed further in Section III.C. below, the appeal in this matter is likely to last far beyond those dates. As such, if one or both of the aforementioned items are not renewed, it would place Nano's proposed bond in limbo, and could result in Axos suffering severe prejudice.

Moreover, it is unclear if the bond has actually been paid for and issued. As such, prior to the approval of *any* bond—and certainly before any stay of execution of the Judgment as to Nano is entered—payment and issuance of the bond must be confirmed.

Finally, Nano's proposed bond currently identifies only Axos as the "Obligee," which is insufficient to ensure Axos's interests are protected. For example, if Axos is part of a merger or acquisition, the bond may not adequately protect the interests of any subsequent/new entity that is created. As such, the "Obligee" in the bond should include Axos, as well as its "successors, executors, administrators, and assigns." That will ensure Axos's interests are protected.

Simply put, the documents supporting Nano's proposed bond (including the Undertaking, Power of Attorney, and Certificate of Authority) create concerns on their face that Nano's proposed bond is insufficient to serve its purpose of protecting Axos's interest. If this Court is to approve *any* bond and grant a stay of execution of the Judgment as to Nano, each of those concerns needs to be adequately addressed prior to such approval.

**C.** **Nano's bond is insufficient to cover all outstanding amounts Nano owes, plus interest, costs (already incurred and on appeal) and other relief, and should not be approved.**

**1. *The purpose of a bond is to protect the appellee, and ensure it is sufficient to cover the total amount that appellant will owe.***

To evaluate the adequacy of Nano's proposed bond, it is important to first consider the purpose behind the requirement for a bond. The Ninth Circuit has explained, "the 'purpose of a supersedeas bond is to secure the appellees from a loss

**OPPOSITION TO DEFENDANT NANO BANC'S MOTION FOR APPROVAL OF BOND**

resulting from the stay of execution and a full supersedeas bond should therefore be required.'" *Pac. Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.*, 935 F.2d 1019, 1027 (9th Cir. 1991) (*quoting Rachel v. Banana Republic, Inc.* 831 F.2d 1503, 1505 n.1 (9th Cir. 1987). "The posting of a bond protects the prevailing plaintiff from the risk of a later uncollectible judgment and compensates him for delay in the entry of the final judgment." *Zhongtie Dacheng (Zhuhai) Inv. Mgmt. Co. v. Yan*, No. SACV 22-461-KK-ADSX, 2024 WL 5670682, at *8 (C.D. Cal. Dec. 9, 2024) (*quoting N.L.R.B. v. Westphal*, 859 F.2d 818, 819 (9th Cir. 1988)). "Thus, '[b]ecause the stay operates for the appellant's benefit and deprives the appellee of the immediate benefits of his judgment, a full supersedeas bond should be the requirement in normal circumstances.'" *Id.* (*quoting Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*, 636 F.2d 755, 760 (D.C. Cir. 1980)).

"The amount of the supersedeas bond is in the Court's discretion." *Wishtoyo Found.*, 2019 WL 8226058, at *2; *see also Am. Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1109 (9th Cir. 2000), as amended on denial of reh'g (Nov. 1, 2000) (holding that the district court did not abuse its discretion in requiring defendant to post a bond for more than double the amount of the judgment). "Generally, the amount of the bond should be sufficient to pay the judgment plus interest, costs and any other relief (e.g. attorney fees) the appellate court may award." *Zhongtie*, 2024 WL 5670682, at *9 (quoting *Cotton ex rel. McClure v. City of Eureka, Cal.*, 860 F. Supp. 2d 999, 1027 (N.D. Cal. 2012).) And when determining the appropriate amount for a bond, it is important to consider "the amount of time an appeal could take and the effort an appeal will involve for Plaintiffs' counsel." *Wishtoyo*, 2019 WL 8226058, at *2 (*increasing* the amount of appellant's proposed bond from 125% up to 150% of the award being appealed). Given these guiding principles, "[c]ourts, exercising their discretion, have found bonds equal to 125% and up to 150% of the judgment to be sufficient to protect plaintiff's interest, damages from delay, and costs pending appeal." *Trautt v. Keystone RV Co.*, No. 2:19-CV-00342-RAJ, 2021 WL 4860810, at *2 (W.D.

**OPPOSITION TO DEFENDANT NANO BANC'S MOTION FOR APPROVAL OF BOND**

Wash. Oct. 19, 2021) (collecting cases); *see also Wishtoyo*, 2019 WL 8226058, at \*2 (rejecting appellant's proposed bond at 125% of award and increasing bond requirement to 150% such award, "[i]n light of the amount of time an appeal could take and the effort an appeal will involve for Plaintiffs' counsel and Plaintiffs as public interest organizations."); *Mooney v. Roller Bearing Co. of Am., Inc.*, No. 2:20-CV-01030-LK, 2024 WL 664402, at \*2 (W.D. Wash. Feb. 16, 2024) (approving bond in the amount of 150% of the judgment).

Given all relevant factors, Axos respectfully requests this Court exercise its discretion in requiring Nano to post a bond in the amount of 150% of the $14 million Judgment entered against Nano in order to obtain a stay of execution on the Judgment. This amount is also consistent with and informed by the California rules, which require a bond in the amount of 150% the judgment or order when provided by an admitted surety insurer (and 200% if not). *See* Cal. Code Civ. Proc. § 917.1(b); *see also Wishtoyo*, 2019 WL 8226058, at \*2 (recognizing the 150% rate in California and acknowledging that "district courts have discretion over the amount of the bond" and thereby increasing appellant's proposed bond from 125% to 150%). It is also necessary to protect Axos from further loss given Nano's counsel's repeated assertion that Nano is facing upcoming action against it,[8] which if assumed true would mean that an insufficient bond will leave Axos will no opportunity to fully recover, which is particularly troubling given

---

[8] Nano has withdrawn its *Ex Parte* Application (DE 414), but the concerns resulting from the statements made therein and in the supporting declaration remain. Nano's counsel asserted in an October 8, 2025 email that Nano was facing imminent shut down and regulatory action. (Timm Decl., Ex. A.) This same sentiment was contained in the sworn declaration filed with its Ex Parte Application (Zfaty Decl. (DE 404-1, at ¶ 4.) Further, while Nano has purportedly withdrawn its prior *Ex Parte* Application (*see, e.g.,* DE 414), the only reason Nano has given for such withdrawal is that the *Ex Parte* Application was "mistakenly filed on October 8, 2025" and that it was "filed in error." (*See, e.g.,* DE 415.) And yet Nano not only filed this *Ex Parte* Application, but reaffirmed it desire for the relief sought therein by, *inter alia*, filing a (procedurally improper) Reply in support of its Ex Parte Application five days later. (*See* DE 406.) Nano's counsel expressed this same sentiment regarding imminent shutdown in an October 8, 2025 email. Neither Nano nor its counsel has ever informed Axos that its statements were false or otherwise inaccurate. Thus, Axos's concerns regarding potential action against Nano and Nano's ultimate ability to pay after a lengthy appeal remain.

**OPPOSITION TO DEFENDANT NANO BANC'S MOTION FOR APPROVAL OF BOND**

the jury concluded that Nano's conduct was willful, malicious, and oppressive. (*See, e.g.,* DE 305 at §§ I.8, II.8, & III.9.)

> ### 2. *The Judgment against Nano is $14 Million, and it is the starting point to consider when determining any bond Nano must post.*

The Judgment entered in Axos's favor was for a total of $40 million, with $14 million as to Nano. (DE 355.) That is unequivocal and inarguable. In fact, even Nano's own Motion *admits* that the Judgment entered against Nano was for $14 million. (*See, e.g.,* DE 412 at 3:3-4.) Without a doubt, therefore, the starting point for evaluating any bond amount must necessarily begin with some multiple of that $14 million judgment.

Nano, however, appears to argue that its bond is sufficient because it is "more than double that typically required." (*See* DE 412 at 3:27-4:3, 4:20-25.) Not true. Nano's argument is not based on the amount of relief awarded against Nano in the Judgment—which is $14 million—but instead based on argument in a Rule 59 Motion that the amount of the judgment *should* have been $20 million (rather than $40 million), and so Nano should only liable for $7 million. (*See generally,* DE 366.) And Nano asserts the bond it proposes is more than 200% of that hypothetical $7 million. (DE 412 at 3:17-4:3.) For reasons set forth in detail in Axos's Opposition to Defendants' Rule 59 Motion, Defendants' argument is meritless and relies on inadmissible declarations that violate, among other things, the "no impeachment" rule. (*See generally,* DE 394.) More specifically, Defendants' entire Rule 59 Motion rests on an inaccurate reading of Federal Rule of Evidence 606 to allow jury testimony, to argue an exception to Rule of Evidence 606 allows consideration of the juror testimony: an exception Judge Bernal has previously recognized *does not* apply in the type of situation Defendants assert. *Sagicor Life Ins. Co. v. Jang*, No. EDCV192028JGBKKX, 2022 WL 17328237, at *3 (C.D. Cal. Oct. 27, 2022) (recognizing that the "mistake" exception Defendants rely on "applies only to clerical errors and not to whether 'the jurors were operating under a misunderstanding about the consequences of the result they agreed upon' or 'whether

**OPPOSITION TO DEFENDANT NANO BANC'S MOTION FOR APPROVAL OF BOND**

the jury misunderstood or misapplied an instruction striking juror affidavit as being "categorically barred under FRE 606(b)").

Nano cannot rely on arguments in Defendants' Rule 59 Motion to unilaterally claim a lower Judgment amount than this Court entered in order to obtain approval of a lower bond amount. Nano's Motion claims that the "corrected judgment amount" is only $7,000,000. (DE 412 at 4:1-3.) Yet *there is no corrected judgment*. (*See, generally,* Docket.) Instead, Nano simply pretends Defendants have already prevailed on their Rule 59 Motion and reduced the Judgment against Nano. This is not appropriate. Nor is it appropriate to argue that a bond that does not come close to protecting Axos is nonetheless sufficient because it is more than what *Nano believes the Judgment should be*. (DE 412 at 4:1-3, 20-25.) Nano does not get to simply pretend the Judgment is different than what was actually entered by this Court. If it could, all defendants could simply decide for themselves how much a judgment against them was "really worth" and then post a bond significantly less than the actual judgment entered against them. Indeed, adopting Nano's argument that *it* decides what the "true amount" of the Judgment is would also severely undermine the purpose of Rule 62(b)'s bond requirement of protecting Axos because it would allow any defendant to post a bond based on what *they thought* the judgment should be, rather than what the judgment actually is. *See, e.g., Pac. Reinsurance Mgmt. Corp.*, 935 F.2d at 1027 (purpose of bond requirement is to protect  appellees.) Nano has not cited any authority approving of this self-serving and unrealistic approach to setting a bond amount. If there were such authority, it would turn the purpose of the bond on its head, as every defendant who appeals a judgment against them almost certainly believes the judgment is *too high*, and thus would post a bond in an amount less than what it believes it should be.

It is unclear from Nano's Motion if Nano seriously contends the bond amount should be determined based on what Nano thinks the Judgment should be (DE 412 at 3:28-4:2), rather than what the Judgment actually is. For example, Nano correctly notes that "[t]he bond is 125% of the judgment" (DE 412 at 4:20) but then in the very next

16

**OPPOSITION TO DEFENDANT NANO BANC'S MOTION FOR APPROVAL OF BOND**

sentence falsely asserts that "the current Bond amount is more than double that typically required" (DE 412 at 4:24-25.)  So, out of an abundance of caution, Axos has reaffirmed that the actual Judgment against Nano was entered for $14 million, and that should be the starting point for any bond amount Nano is required to post to obtain a stay.

### 3. *Nano's proposed bond is insufficient to cover the total amount Nano will owe and ensure the purposes of the bond requirement are met.*

When using the appropriate starting point (i.e., the $14 million Judgment against Nano), and considering the additional costs, fees, and interest Nano will owe—including those that continue to accrue during Defendants' Appeal—it is clear that a bond in the amount of $17,574,335.00 is woefully insufficient.  Such insufficiency becomes clear when observing the actual facts and numbers at issue—rather than simply claiming 125% of $14 million is sufficient without explanation, as Nano's Motion does.[9]  (*See, e.g.,* DE 412 at 4:16-25.)[10]

Calculating the likely amount Nano will owe after its appeal begins with the Judgment.  As noted above, that amount is $14 million.  (DE 305.)  That amount does not include the $37,854.94 in taxable costs that Axos was awarded on October 3, 2025, after entry of Judgment.  (DE 399.)  Nor does it account for any of Axos's attorneys' fees, non-taxable costs, pre-judgment interest, or post-judgment interest, each of which the Judgment states will be determined by post-verdict motion(s).  (DE 355.)

---

[9] Given Axos's Opposition to Nano's previously filed its *Ex Parte* Application pointed out the lack of a sufficient explanation, Nano had every opportunity to explain why 125% of $14 million was sufficient in this Motion, and yet still failed to do so.

[10] This is *unlike* previous instances where Judge Bernal approved of bonds in the amount of 125%.  For example, on distinguishable prior occasions, Judge Bernal has approved of bonds in the amount of 125% *at the request of appellees.  See, e.g.,* Jang v. Sagicor Life Ins. Co., No. EDCV171563JGBKKX, 2019 WL 6434766, at *4 (C.D. Cal. July 10, 2019) (approving bond at 125% as requested by appellee); *WB Music Corp. v. Royce Int'l Broad.*, No. EDCV16600JGBDTBX, 2018 WL 6265000, at *3 (C.D. Cal. Oct. 4, 2018) (same); *In re Jerold Meints*, No. EDCV 14-2152 JGB, at DE 27, p. 3 (recognizing the bond amount "is the amount requested by counsel for Appellee.")  Here, prospective appellee, Axos, requests a bond at 150% of the Judgment.

**OPPOSITION TO DEFENDANT NANO BANC'S MOTION FOR APPROVAL OF BOND**

Axos has now filed one such post-trial motion: its Fees Motion.  (*See* DE 361.) In its Fees Motion, Axos seeks $3,628,542.28 in attorneys' fees (DE 361 at 2:6-8), $170,439.41 in non-taxable costs (*id*., at 2:9-11), $10,485,991.76 in prejudgment interest on Axos's DTSA claim (compounded annually) (*id*., at 27:18-29:2), and post judgment interest at 4.08% (*id.,* at 29:3-9.)  In total, Axos's Fees Motion seeks an additional monetary award of $14,284,973.45.  Without doubt, Axos is the prevailing party under the DTSA and contract law.[11]  (*See, e.g.,* DE 305 at §§ I, V, & VI; 361 at 12:11-17 & 13:7-12.)  Moreover, as addressed in Axos's Reply brief in support of its Fees Motion, Defendants have apparently conceded that Axos is entitled to at least $3,319,354.28 in fees and $151,179.10 in non-taxable costs.  (*See, e.g.,* DE 393 at 6:3-9, §II.A, *generally*, & 14:5-18; *see also*, DE 391 at 9:11-22.)[12]  As such, *even if* the Court grants Axos's Fees Motion with respect to only the amounts that Defendants do not challenge, Axos will be awarded an additional $3,470,533.38 (the sum of $3,319,354.28 in fees and $151,179.10 in non-taxable costs).

Nano's proposed bond is, quite simply, insufficient.  Specifically, the Judgment ($14,000,000), plus conceded costs and fees ($3,470,533.38), plus taxable costs Axos has already been awarded ($37,854.94) total $17,508,388.32 (and that number is likely to significantly increase for the reasons stated in the Fees Motion and Reply, *see, e.g.,* DE 361 & 393).  Nano's currently proposed bond will *barely* cover that amount, and does not cover any amount of additional amounts incurred during 2 years of appeal, including post-judgment interest, costs on appeal, or fees on appeal.

---

[11] The jury concluded that all Defendants misappropriated Axos's trade secrets willfully and maliciously, and that Defendants further intentionally interfered with Axos's contracts and prospective economic relationships with malice, fraud, oppression, and willfulness, which entitles Axos to attorneys' fees and costs under the DTSA. (DE 305 at §§ I.8, II.8, III.9.)  Defendants do not dispute this.  (*See generally*, DE 366, 391, & 404.)

[12] Defendants' own calculations in their Opposition to Axos's Fees Motion include inaccuracies as highlighted in Axos's Reply Brief.  (*See, e.g.,* DE 393 at 6:3-9, §II.A, *generally*, & 14:5-18.)

**OPPOSITION TO DEFENDANT NANO BANC'S MOTION FOR APPROVAL OF BOND**

When post-judgment interest is considered, Nano's total liability will quickly eclipse Nano's proposed bond. *See, e.g.* 28 U.S.C. § 1961 (post-judgment interest is computed daily and compounded annually). Here, Axos is entitled to post-interest on the Judgment at a rate of 4.08%. (*See e.g.,* DE 361 at 29:3-9; DE 393 at 24:15-25:6.) Thus, post-judgment interest will also accrue against Nano at a daily rate of $1,564.93 based on the current amount of Judgment ($14 million) against Nano.[13] (*See, e.g.,* DE 390, p.2.) Once the judgment is amended, post-judgment interest against Nano will continue to accrue at either $1,957.10 per-day[14] (if the Court grants Axos's Fees Motion *only* as to what Defendants have conceded Axos is entitled to), or $3,165.95[15] (if the Court Grants Axos's Fees Motion in its entirety).

Post-judgment interest will continue to accrue throughout the two (or more) years of appeal. Since the Ninth Circuit has *stayed Defendants' appeal* (other than mediation), no current progress is being made on such appeal, and will not be made until the pending motions are decided (the hearings for which are December 1 and December 15). (*See, e.g.,* Ninth Circuit Case No. 25-5563 at DE 3.1; *see also,* DE 413.) As such, post-judgment interest will continue to accrue at a rate of $1,564.93 until Axos's Fees Motion is heard and the Judgment is amended, and will thereafter continue to accrue at an amount of ***at least*** $1,957.10 per day, which amounts to $714,342.24 per year. Thus, the Judgment of $14 million against Nano, plus awarded taxable costs, plus conceded fees and non-taxable costs and post judgment interest (based on the current $1,564.93 daily rate) through appeal total ***at least*** $18,650,788—which already exceeds Nano's proposed bond.

Nano's total liability will be *further* increased by Axos's costs and fees on appeal. Axos will be entitled to its costs on appeal if it is the prevailing party. *See, e.g.,* Fed. R.

---

[13] $14,000,000*4.08%/365.

[14]  $17,508,388.32*4.08%/365.

[15]  $28,322,828.39*4.08%/365.

**OPPOSITION TO DEFENDANT NANO BANC'S MOTION FOR APPROVAL OF BOND**

App. P. 39(a)(1)-(2) (costs taxed against appellant is appeal is dismissed or judgment affirmed). Axos will *also* be entitled to recover its attorneys' fees incurred on appeal under the DTSA, which it conservatively estimates to be $350,000. *See, e.g., Voice v. Stormans Inc.*, 757 F.3d 1015, 1016 (9th Cir. 2014) ("Generally, a party that is entitled to an award of attorneys' fees in the district court is also entitled to an award of attorneys' fees on appeal."); *see also* 18 U.S.C. § 1836(b)(3)(D) (awarding attorneys' fees upon finding of willful and malicious misappropriation); DE 305 (finding willful and malicious misappropriation) Timm Decl., ¶ 5. These costs and fees on appeal must *also* be considered when evaluating the appropriate amount for a bond. *See, e.g., Zhongtie*, 2024 WL 5670682, at *9 (amount of bond must be sufficient to cover judgment, plus interest, plus costs and fees the appellate court may award).

The longer an appeal is pending, the more significant the amount of post-judgment interest, costs, and fees that will be accrued, further justifying an increase from Nano's proposed 125% bond to Axos's proposed 150% bond. In fact, Courts have recognized that the expected length of a stay of enforcement impacts the amount of the bond required. *See, e.g., Kaneka Corp. v. SKC Kolon PI, Inc.*, No. CV 11-3397 JGB (RZX), 2017 WL 11643347, at *2, fn.3 (C.D. Cal. June 30, 2017) (recognizing the greater risk inherent in the longer duration of a stay pending appeal as opposed to that necessary to resolve a post-judgment motion."). And, as noted above, courts have found it appropriate to increase the bond amount from 125% to 150% where the time of an appeal was likely to be lengthy. *See Wishtoyo*, 2019 WL 8226058, at *2.

Given the amount of Judgment against Nano, the amount that will be *added* to that Judgment upon consideration of Axos's Fees Motion (including the amounts that Defendants have conceded), the amount of taxable costs that Axos has already been awarded, the accrual rate of post-judgment interest, and the amount of costs and attorneys' fees Axos will be entitled to on any appeal, the total amount Nano owes will *rapidly* and *significantly* eclipse the $17,574,335.00 bond Nano proposes. In fact, if the Court grants Axos's Fees Motion in its entirety (and assuming amended judgment is

**OPPOSITION TO DEFENDANT NANO BANC'S MOTION FOR APPROVAL OF BOND**

1  entered on December 15, 2025 immediately following the hearing on such motion), plus

2  post-judgment interest during post-judgment appeal, plus $350,000 in conservatively

3  estimated attorneys' fees on appeal, Nano's total liability would be $31,192,107.08—

4  clearly well in excess of Nano's proposed bond.

5        In consideration of the above, among other reasons, Axos had previously notified

6  Nano, through counsel, that it believed a bond in the amount of 125% of the Judgment

7  was insufficient.  Specifically, on October 4 and October 6, Axos's counsel met and

8  conferred with Nano's counsel regarding the appropriate amount of a bond for Nano.

9  (*See, e.g.,* DE 405-1 at ¶6.)  Through those discussions, Axos's counsel explained that,

10  *inter alia*, a bond of 125% of the $14 million Judgment against Nano would not cover

11  the Judgment amount, plus attorneys' fees, costs, and interest as further explained above.

12  (*Id.*)  Axos's counsel also noted that the California state court rule is 150%, and that

13  there is federal authority supporting that same amount.  (*Id.*)  For those reasons, among

14  others, Axos's counsel stated that a 125% bond was insufficient, but that Axos would

15  agree to a bond in the amount of 150% of the $14 million judgment (or approximately

16  $21 million).  (*Id.*)  Nano declined that offer, and instead obtained a bond it knew Axos

17  believed to be deficient.  For the reasons addressed above (including the threat of

18  upcoming action against the bank), Nano's proposed bond *is* deficient, and should be

19  rejected. Nano should instead be required to post a bond in the amount of $21,000,000

20  (or 150% of the $14 million Judgment).

21        **D.    The Individual Defendants—Troncale, Hasler, and Martello—have**

22              **not requested Court approval of, or posted, a bond nor have they**

23              **sought a stay.**

24        The Motion at issue was brought by *Nano* only, and seeks to stay enforcement

25  *against Nano* only, based on a bond posted by *Nano*.  (DE 412.)  The Notice of

26  Undertaking informing this Court and Axos of Nano's proposed bond was purportedly

27  filed on behalf of all Defendants, but it, too, is clear that *only* Nano is purporting to post

28  a bond.  (DE 402 at 2:3-4; DE 402-1.)  Such distinction is important because it means

**OPPOSITION TO DEFENDANT NANO BANC'S MOTION FOR APPROVAL OF BOND**

that neither Troncale, Hasler, nor Martello have posted any such bond. The Individual Defendants are not seeking any relief by way of the Motion (including, *inter alia*, a stay of enforcement of the Judgment against the Individual Defendants). (*See, e.g.,* DE 404 at 5:12-18.) That notwithstanding, and out of an abundance of caution, Axos nonetheless briefly addresses below why no such relief/stay should be granted to the Individual Defendants. Axos reserves the right, however, to expand upon the below argument if any of the Individual Defendants request Court approval of a bond or stay of enforcement in the future.

Nano's proposed bond—the only bond at issue—is insufficient to cover all amounts owed by Nano, let alone to cover the amounts owed by the Individual Defendants (Troncale, Hasler, and Martello). Indeed, Nano's bond is in the amount of $17,574,335.00, which is less than 44% of the total Judgment for $40,000,000 (before fees, costs, and interest). (DE 355.) When the additional amounts sought in Axos's pending Fees Motion, plus post-judgment interest, costs, and fees on appeal are considered, the deficiency becomes even more apparent. (*See* DE 361.) And, as addressed above, Defendants' opposition to Axos's Fees Motion *concedes* Axos is entitled to a significant portion of the fees and costs Axos's Fees Motion seeks. As such, Nano's Motion applies *only* to Nano, and none of the Individual Defendants should be granted any relief pursuant thereto. To grant otherwise would be to allow the Individual Defendants to obtain relief without actually moving for such relief and without posting a bond or establishing entitlement to a stay.

"[C]ourts will generally grant unsecured stays only in 'unusual circumstances … if they do not unduly endanger the judgment creditor's interest in ultimate recovery." *Zhongtie*, 2024 WL 5670682, at *8 (C.D. Cal. Dec. 9, 2024) (quoting *Fed. Prescription Serv., Inc.*, 636 F.2d at 760). And as Judge Bernal has previously expressed, "[t]ypically, an unsecured stay is disfavored." *Kaneka Corp.*, 2017 WL 11643347, at *2 (collecting cases) (analyzing former Rule 62(b) relating to stay pending disposition of a motion); *see also Bennett v. Franklin Res., Inc.*, 360 F. Supp. 3d 972, 977, fn. 2 (N.D. Cal. 2018),

**OPPOSITION TO DEFENDANT NANO BANC'S MOTION FOR APPROVAL OF BOND**

*aff'd sub nom. Bennett v. Islamic Republic of Iran*, 778 F. App'x 541 (9th Cir. 2019) (recognizing former Rule 62 has been reorganized and that new Rule 62(b) "carries forward in modified form the supersedeas bond provisions of former Rule 62(d)."). When considering whether to grant an unsecured stay, "[t]he moving party typically bears the burden of demonstrating the reasons for a departure from the full security supersedeas bond." *Zoellner*, 2024 WL 4700633, at *2. Here, the Individual Defendants have not even *requested* a stay, let alone met their burden to demonstrate why such a stay should be granted without a bond.

## IV. CONCLUSION

In light of the foregoing, the Court should deny Nano's Motion.


DATED: November 3, 2025

**K&L GATES LLP**

By: */s/ Zachary T. Timm*

Christina N. Goodrich
Zachary T. Timm
Connor J. Meggs

*Attorneys for Plaintiff Axos Bank*


## LOCAL RULE 11-6.1 CERTIFICATION

The undersigned, counsel of record for Plaintiff Axos Bank, certifies that this brief contains 6,909 words, which complies with the word limit of L.R. 11-6.1.


DATED: November 3, 2025

**K&L GATES LLP**

By: *Zachary T. Timm*

Zachary T. Timm

**OPPOSITION TO DEFENDANT NANO BANC'S MOTION FOR APPROVAL OF BOND**